ROBERTSON, J.
Joseph T. Mitchell and William J. Shumate were jointljT indicted, at June term 1858, in the Circuit court of Augusta, for a violation of the law prohibiting betting on elections.
*The defendants having elected to be tried separately, an issue was made up as to the defendant Shumate, upon the plea of “not guilty,” and a jury sworn. Upon the trial it was proved that a short time before the election of county officers for Augusta, to be made in May 1858, Joseph T. Mitchell sold to the defendant Shumate a wagon, at the price of one hundred and fifty dollars, to be paid by the defendant when Jefferson Kinney, one of the candidates for the office of County court clerk, at sai'd election, should be elected to that office, and not at all, if he was not elected: and that the defendant at the time of said sale put up his check agreeably to that understanding, and upon those terms took possession of the wagon. The witness who proved these facts further stated that he was under the impression that at the time of the sale, Mitchell remarked that the wagon had cost him one hundred and thirty dollars. The witness himself was of the opinion that it was fully worth that sum, and perhaps as much as one hundred and fifty dollars, to any one who needed such a wagon.
The defendant then introduced a witness, who proved that he was a master mechanic and contractor, and thought he was well acquainted with the value of such a wagon as that which the defendant had purchased from Mitchell; that he had seen and examined the identical wagon in question, and regarded it, at the time the defendant got it from Mitchell, as fairly worth one hundred and fifty dollars in ijioney.
This being all the evidence, the case was argued before the jury; and then the defendant, by his counsel, moved the court to give the jury the following instructions, to wit:
“1st. A bet implies risk in both parties; and where one person sells another property at a fair valuation, to be paid for when a particular candidate shall be elected, it is not a wager, within the meaning of the *act of assembly under which this prosecution is had; therefore, if the jury believe from the evidence in this case, that the wagon sold by Joseph T. Mitchell to the defendant, was worth one hundred and fifty dollars, they must find the defendant not guilty.
2d. Under section 10 of chapter 198 of the Code, the limit of the fine to which a party can be subjected for a violation of said section, is the amount or value of such money or other thing bet or wagered by him; and therefore, if the jury believe that the defendant purchased property at more than its fair valuation, to be paid for when a particular candidate was elected, then the amount so bet or wagered by him was the difference between a fair valuation of the property so purchased and the price at which it was sold, and the jury cannot impose a fine of greater amount than such difference in value and price.
3d. The act under which this prosecution is had, must he construed as a penal and not a remedial statute.”
But the court refused to give said instructions. To which opinion of the court the defendant excepted: and the jury having found him guilty, and assessed his amercement at one hundred and thirty dollars, he moved the court to set aside the verdict and grant him a new trial, on the ground that said verdict was contrary to the law and the evidence of the case; but the court overruled the said motion: to which ruling of the court he again excepted. And judgment having been entered in conformity with said verdict, a writ of supersedeas has been awarded from this court, on the petition of said Shumate, who assigns as matters of error, the refusal of the court to *991 give the three several instructions prayed for as above stated.
The question which it will be most convenient to consider first, is, whether the act, under which the prosecution was had, is to be construed as a penal or *as a remedial statute. The 20th section of chapter 198 of the Code provides, that “All laws for suppressing- gam- ■ iug, lotteries, uncliartered banks, and the circulation of bank notes for less than five dollars, shall be construed as remedial.”
The question under consideration is, therefore, narrowed to the enquiry, whether the act prohibiting betting on elections is a law “for suppressing gaming, ” within the meaning of the 20th section ; which, as it changes the rule of interpretation prescribed by the common law in reference to penal statutes, must itself be construed strictly.
Under a strict construction of this section, and on the authority of Chubb’s Case, 5 Rand. 715, it might well be doubted whether we would be justified in coming to the conclusion that the law against betting on elections is embraced by the general words “all laws for suppressing gaming,” were it not for the light which is thrown on the subject by the history of the legislation respecting it, and by the table of contents prefixed to chapter 198 of the Code, and the captions to the sections of that chapter.
Our first statute against betting on elections was passed in the year 1840. Acts 1839-40, ch. 21, p. 30. It declared that any person violating it should “be guilty of unlawful gaming. ” The offence was of course thus brought within the operation of the act providing that all laws against gaming should be construed remedially.
In the revisal of the criminal code, made in 1848, the provision against betting on elections is to be found in the chapter relating to offences against publ'C policy, and is in the following words :
“Any free person who shall bet or wager any money or other thing over the value of five dollars upon any election or appointment to any office or place, to be made under authority of the constitution and laws of *this state, or of the United States, shall be deemed guilty of unlawful gaming, and be punished by fine not exceeding the value of the money or thing so bet or wagered.” Acts 1847-8, ch. 10, § 11, p. 115.
The revisors, in their report, follow the whole of this chapter very closely, adopting not only, for the most part, its provisions, but adhering to the same arrangement of the subjects. Wherever any substantial alteration is proposed, attention is generally called to it by means of a note; but the phraseology of most of the sections is changed by them for the sake, it would seem, of brevity and supposed clearness.
The 11th section above quoted is, in the report, made the 10th section of the chapter, and is to be found there in the following words:
“If a free person bet or wager money or other thing over the value of five dollars, on any election or appointment to any office or place, to be made under the law, he shall be fined not exceeding the value of such money or other thing. ’ ’
No note, indicating that any change in the law was designed, is appended.
The committee of revision proposed to amend the section, by striking out the words “the law,” and inserting, in their place, the words “authority of the constitution and laws of this state or of the United States.” This amendment was adopted by the legislature, so that the section as now to be found in the Code, is in the following words:
“If a free person bet or wager money or other thing over the value of five dollars, on any election or appointment to any office or place to be made under authority of the constitution and laws of this state or of the United States, he shall be fined not exceeding the value of such money or other thing.”
The fair presumption is, that the words “shall be *deemed guilty of unlawful gaming,” were omitted simply because they were regarded as superfluous and unnecessary. If there could be any doubt about it, it would be removed by reference to the table of contents prefixed to the chapter, and the captions to the sections. These may be looked to as showing the contemporaneous construction of the Code by the revisors when engaged, under the authority of the legislature, in preparing it for publication.
The first general head is “Gaming, lotteries and lottery tickets.” Under it are included the first fifteen sections — the tenth occupying the same relative position that the eleventh did in the act of 1848 — following immediately after the sections relating to “gaming,” and preceding those relating to “lotteries and lottery tickets.”
The next general head is “Unchartered banks and illegal circulation,” the sections under it extending from 16 to 19, inclusive. Then we find, as a caption to sections 20 and 21, the words, “Previous sections remedial; attorney’s fee under them.”
The 20th section has been already quoted. It refers to the subjects treated of in the sections preceding it, instead of the sections themselves, but does not mention eo nomine ihe law against betting on elections, although it is contained in one of the preceding sections of the chapter.
The 21st section, however, refers to the preceding sections themselves, and shows that all of them are embraced under it. It is’in these words:
“In every case of conviction for an offence under any preceding section of this chapter, an attorney’s fee of ten dollars shall be taxed in the costs.”
The caption to the two sections shows that the provision for the attorney’s fee applies to the same sections which it is declared shall ba_ construed as remedial, *thus making it apparent that *992 the words “previous sections’’ were intended to mean all previous sections. This is rendered still more certain by reference to the table of contents prefixed to the chapter. We find there, opposite to section 20, the words, “All previous sections remedial.”
But it may be asked, why it is, if precisely the same previous sections are referred to in the 20th and 21st sections, that the same language was not used in each. The answer is, that it was designed by the 20th section to fix a general rule of construction, which should embrace not only the laws then enacted, but all such as might thereafter be passed upon the subjects referred to.
It is manifest that no change was intended to be made in the law prohibiting betting on elections, or in the rule of construction applicable to it; and that the act under which this prosecution was had, should, like the previous laws on the same subject, be construed as remedial.
We come next to the consideration of the propriety of the refusal to give the other instructions asked for.
The fine being limited to an amount not exceeding the value ’of the money or other thing bet or wagered by the party prosecuted, it is insisted, that “if A bets ten dollars against one thousand dollars, with B, that a particular candidate will be elected, the value of the money bet by A is only ten dollars; and if prosecuted, he could only be fined ten dollars, whilst B might be fined one thousand dollars. The risk, therefore, must fix the amount of the fine. Hence, if a man buys property at a fair valuation, payble when a particular candidate is elected, he risks nothing ; and it is not a bet or wager, within the meaning of the statute.”
Such cannot have been the intention of the legislature. It could never have been designed that where ^parties are equally guilty, the punishment should be so unequal that, in the case supposed, the loser of one thousand dollars should be liable to a fine one hundred times greater than that which could possibly be imposed on the winner of the same amount. Yet this conclusion seems logically to follow from the premise that the amount bet by a party is the amount risked by him.
The reasoning which leads to such results must be fallacious. The fallacy consists in the assumption- that the amount bet by a part3r must always and of necessity be the amount risked by him, and that one cannot be without incurring some risk of loss.
It is true, that a bet does imply risk, but it does not necessarily imply risk in both parties. There must be between them a chance of gain and a chance of loss; but it does not follow that each of the parties to the bet must have both these chances. If, from the terms of the engagement, one of the parties may gain but cannot lose, and the other may lose but cannot gain, and there must be either a gain by the one or a loss by the other, according to the happening- of the contingencj', it is as much a bet or wager as if the parties had shared equally the chances of gain and of loss. The amount bet by them is the amount which the one may win, and the other may lose; and each of them may, under the statute, be fined “not exceeding” that amount, the fine, within that limit, being in the discretion of the jury, who may, if they choose, discriminate between the winner and the loser: a discrimination which may often with great propriety be made in favor of the loser, and against the winner.
One person alone cannot be guilty of the offence of betting. There must be always at least two parties engaged in it. It is a joint act: and when the chance of gain and the chance of loss are created, it matters *not how those chances are distributed between the parties there exists all that is necessary to constitute a bet. The parties are jointly and equally guilty, and each of them is liable to the same penalty, unless the jury think proper to discriminate —it being in their power to fine each the full amount risked, or which may be won by either; or by anyone of them when more than two are engaged in the bet.
It might therefore well be insisted, that even upon a strict construction of the statute, the court was right in refusing both the first and second instructions asked for. But, as has been shown, the act is a remedial one, and it is therefore to be construed liberally, so as to suppress the mischief and advance the remedy. So construing it, there cannot be the slightest doubt upon the subject. The object of the law is to preserve the purity of elections; which is always impaired whenever private and personal interests are brought to bear upon them, instead of those high considerations of public duty by which alone the voters ought to be influenced.
One of the worst forms in which private interest is made to operate on elections, is that of betting upon the result. It is. not only calculated to prevent the parties to the bet from exercising the right of suffrage in a proper manner themselves, but it exposes their friends and all within their reach to improper influences and solicitations.
It cannot be pretended that a bet, under the form of a sale, by which one party sells for its precise value an article to be paid for only in the event of the election resulting in a particular way, is not as fully within the mischief intended to be remedied, as any bet whatever can be. The party selling is influenced by the fear of losing his property for nothing — the party purchasing, by the hope of getting it for nothing. EJach has a pecuniary ^'interest in the result, which must affect him in the same manner, although it may be not to the same degree, as if he had the chances of both gain and loss.
But a Tennessee case (Quarles v. The State, 5 Humph. R. 561) is relied on as an authority to show that in order to constitute a bet or wager, there must be a risk in- *993 cnrred by both parties ; and it is directly in point for the purpose.
The same question, however, seems to have been decided differently elsewhere. In the case of Marean v. Tongley, 21 Maine R. 26, it appeared that a hor.se, estimated to be worth one hundred dollars, was sold for that amount, to be paid when Mr. Van Burén should be elected president of the United States. The transaclion was held to be a bet. And if the reporter’s abstract of the case of Tramwell v. Gordon, 11 Alab. R. 656, is correct in the statement that the notes were given for the value of the land, that is a decision to the same effect. So that if this case were to be determined upon the authority of decisions in other states, the preponderance would seem to be in favor of the conclusion to which I have arrived. But such decisions have no binding force here, and are of authority only so far as they commend themselves to our approval, by the reasons on which they are founded. The Tennessee case simply announces the judgment of the court, without giving any reason or referring to any authority, while in the cases referred to from Maine and Alabama, this particular point does not seem to have been discussed either at the bar, or by the court, it appearing to be taken for granted that the circumstance that one of the parties incurred no risk, did not affect the question (which was controverted on other grounds) whether the transaction amounted to a bet or wager.
It was therefore proper to examine the question irrespective *of authority; and having done so, I entertain no doubt that the Circuit court correctly refused to give the instructions asked for.
The court was right also in overruling the motion for a new trial, the verdict being in accordance both with the law and the evidence.
1 am for affirming the judgment.
The other judges concurred in the opinion of Robertson, J.
Judgment affirmed.