ROBERTSON, J.
Costs were not recoverable at common law. It is true that in actions in which damages were given the costs of the plaintiff were in reality considered and included in the quantum of damages, and he thus indirectly.recovered his costs, or their equivalent. But he could not do this in actions in which no damages were given; and the defendant could not, in any case whatever, recover his costs, either directly or indirectly.—It is by virtue of statute law alone that any judgment for costs, eo nomine, can be rendered in favor of either party. 3 Black. Comm. 399; Com. Dig. Tit. Costs; Viner’s Abr. Tit. Costs; 1 Rob. Prac. (old ed.) 389.
The act under which the proceedings in this case were had (acts 1852, ch. 71) provides that the returns of the elections of sheriffs, and of certain other officers, “shall be subject to the enquiry, determination and judgment of the respective county and corporation courts,” and that “the said courts shall in judging of said elections, proceed upon the merits thereof, and shall determine finally concerning the same according to the constitution and laws of this commonwealth” ; but no authority is given by it to said courts to render any judgment for costs. If such authority exists it must be found in some statute conferring upon the courts general power over the subject of costs. The only enactments having any bearing on the question under consideration, are to be found in sections 4 and 8 of chapter 185 of the Code.
The fourth section authorizes the court, “upon any motion (other than for a judgment for money), or upon any interlocutory order or proceeding,” to “give or refuse *costs, at its discretion, unless it be otherwise provided.”
The eighth section declares that, 1 ‘except where it is otherwise provided, the party for whom final judgment is given in any action, or in a motion for judgment for money, whether he be plaintiff or defendant, shall recover his costs against the opposite party.”
Unless the proceedings under the statute of 1852, in the case of a contested election, can be considered as a “motion,” or an “action,” or an “interlocutory order or proceeding,” it is clear that they are not embraced by either of these sections.
They certainly do not fall within the terms “interlocutory order or proceeding” ; and it seems equally clear that they are neither a “motion,” nor an “action.” These words have a well understood technical meaning, and cannot, by any stretch of construction, be made to embrace such proceedings as are directed to be had in cases of contested elections. These proceedings are novel and peculiar in their character, and seem designed rather for the purpose of ascertaining, on behalf of the public, who has been duly elected, than of enabling rival candidates to litigate, on their own behalf, the question of right to an office. No contests can be commenced unless complaint of an undue election, or false return, is made by fifteen or more of the qualified voters, two of whom must make oath or affirmation to the truth of the facts stated in the complaint. This must be filed in the Clerk’s office within ten days after the election, and the party whose election is contested must within ten days after the complaint, be served with a copy of it. The defeated candidate, who is the only other party who can be supposed to have any personal interest in the matter, cannot, at his own pleasure, enter upon the contest; and it may be commenced and prosecuted without his knowledge, or against his wish. He is not a necessary party *in any stage of the proceedings. Indeed the complaint may be made and the election set aside when there has been no candidate except the one whose election is contested. In this case the defeated candidate was not one of the complainants, and the only thing in the record from which his name is to be ascértained is the statement, to be found in the decision of the court, of the number of illegal votes upon his poll.
Proceedings like these cannot be regarded as a “motion,” or an “action,” within the purview of the statutes regulating costs between parties.
Frivolous contests are guarded against by the requirement of an affidavit as to the truth of the complaint, by the number of complainants necessary to commence a contest, and the trouble and expense to which they must be subjected in prosecuting it. These safeguards are sufficient without superadding a liability for costs to the party whose election is contested. Such liability would operate as an undue discouragement to the institution of a contest in which the whole community is as much interested as the complainants. The refusal to' give costs to either party seems to be the best mode of avoiding the discouragement of proper contests on the one hand, and the encouragement of frivolous ones on the *102 other. But whether this be so or not, it is enough for us to know that the legislature has not authorized any judgment for costs to be given in such cases.
The County court in rendering such judgment exceeded its jurisdiction, and a writ of prohibition was a proper proceeding to arrest the execution of said judgment for want of authority in* the County court to render the same.
In this view of the case it is not necessary to decide the question which has been raised as to the right of two of the members of the County court to act as justices.
*The judgment of the Circuit court must be affirmed, ‘ with costs . and damages.
The other judges concurred in the opinion of ROBRRTSON, J.
Judgment affirmed.
ELECTIONS.
I. Suffrage.
A. Rights in General.
B. Virginia Election Law—Statutes.
II. Qualifications of Voters and Office Holders.
III. Registration.
IV. Validity of Elections—Irregularities.
V. Commissioners of Elections—Their Duties, etc.
VI. Officers Elected— Term of Office.
VII. Election Contests.
VIII. Procedure.
A. Certiorari.
B. Mandamus.
C. Prohibition.
IX. Offences against Election Laws.
I. SUFFRAGE.
A. RIGHTS IN GENERAL.
Suffrage—The Right Derived from the Constitution of the State—Legislative Powers — Constitutionality of Statute.—The right of suffrage is derived directly from the constitution of the state, and we look to it to ascertain who may or may not vote. It is not within the power of the legislature to prescribe any qualifications additional to those found in the constitution either directly or indirectly, and, since no educational qualification is prescribed by the constitution none can be required. The sole function of the legislature with respect to suffrage, is to provide the method of voting, to guard against any improper or fraudulent conduct in connection therewith, and to this end it may adopt and enforce reasonable rules and regulations, but the. enforcement of a regulation which virtually establishes a test of qualification of the voter in addition to those prescribed in the constitution is unconstitutional and therefore void. Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483, 1 Va. Law Reg. 176.
It was further held in this case that the act of the assembly, approved March 6,1894, “to provide for a method of voting by ballot,” does not contravene any of the propositions stated above, and it is therefore not unconstitutional.
Duties of Legislature Concerning Electors—Constitutional Provision.—Under the constitution of West Virginia, § 11, art. 4, it is the duty of the legislature to prescribe the manner of conducting and making returns of elections and of determining contested elections, and to pass such laws as may-be necessary and proper to carry out their requirements in this regard without disorder or violence at the polls, and to prevent corruption or fraud in counting the votes ascertaining the result or otherwise. Halstead v. Rader, 27 W. Va. 806.
County and Corporation Courts—Authority to Re= move Judges of Election.—The county and corporation courts have full authority to remove a judge of elections for malfeasance in office or gross neglect of duty, though he has not been convicted by the verdict of a jury of any offenqe. McDougal v. Guigon, 27 Gratt. 133. See Lewis v. Whittle, 77 Va. 423; also, Nelms v. Vaughan, 84 Va. 698, 5 S. E. Rep. 704.
B. VIRGINIA ELECTION LAW—STATUTES.
Australian Ballot System—Constitutionality.—The act of the assembly approved March 6, 1894, entitled “an act to provide for the method of voting by ballot,” is a valid act; and not in conflict with Article III, sections 1 and 2 of the constitution of Virginia, nor with Article I, section 20, nor with Article I, section 8, of the Virginia Constitution. Nor is it in conflict with Article XIV of the amendments to the constitution of the United States. Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483, 1 Va. Law Reg. 176.
Virginia Election Law—Case in Circuit Court of United States.—See the case of Cox v. Gilmer (1898), 4 Va. Law Reg. 229, decided in the circuit court of the United States, Western District of Va. construing the Virginia election law. Act of General Assembly of Virginia, approved March 5, 1890, authorizing judges of an election to order the arrest of any person creating a disturbance at the polls, was held not repugnant to the Constitution of Virginia. See also, Pearson v. Board of Supervisors, 91 Va. 322, 21 S. E. Rep. 483, 1 Va. Law Reg. 176.
Legislative Regulation—Time for Preparing Ballot.— Under the statute, March 6, 1894, providing for voting in booths, a limit to the time for the preparation of ballots was an obvious necessity, for which the legislature had a right to provide, and the court cannot as a proposition of law, decide that the time allowed by the statute is inadequate. The act places no limit on the number of booths that may be supplied, and the county courts have full power to multiply the voting precincts to meet the necessities of the people. Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483, 1 Va. Law Reg. 176.
Special Constables—Their Duties—Statutes.—It was held in Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483, under Act of March 6,1894, that the special constables provided for in said act are sworn officers, charged with the gravest duty to the public in which every citizen is interested, and for failure to perform their duty severe penalties are inflicted. Among these is the duty to render to those who are blind or unable to read on account of defective education every assistance necessary to aid the elector in preparing his ballot. The word “may,” used in the fifteenth section of this act, relating to the duty of special constables, is mandatory and not merely permissive and directory.
Secret Ballot—Duties of Special Constable.—A vote by ballot ex vi t&i'mini implies a secret ballot; and the secrecy of the ballot is a right which inheres in the voter; but a blind man or a man unable to read, must, in the nature of things so far compromise this right of secrecy asUo obtain the aid of others in the preparation of his ballot; for which purpose a constable is provided by the statute. It is therefore the duty of the special constable, which he is *103 sworn to faithfully execute, to assist the voters in preparing their "ballot, when requested, to observe all his rights and to keep the secrecy of his ballot inviolate. Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483.
Construction of Election Statutes.—It is said by the court in "Loomis v. Jackson, 6 W. Va. 691, that “Election statutes are to be tested like other statutes ; but with a leaning to liberality, in view of the great public purpose which they accomplish ; and except where they specifically provide that a thing shall be done in the manner indicated, and not otherwise, their provisions, designed merely for the information and guidance of the officers, must be regarded as directory only; and the election will not be defeated by a failure to comply with them, provided, the irregularity has not hindered any who were entitled to vote from exercising the right of suffrage, or rendered doubtful the evidence from which the result was tobe declared.”
IS. QUALIFICATIONS OF VOTERS AND OFFICE HOLDERS.
Requirements for Citizenship—Evidence of Naturalization—Parol Evidence Inadmissible.—The law requires that an alien, in order to become a citizen, must be naturalized in a court of record and admitted to citizenship by the judgment of such court; therefore if it is claimed that an alien has been naturalized in a certain court, and this is the only court in which he claimed to have been naturalized, and on examination of the record it is shown that no record was made of naturalizing such alien, it cannot be proved by parol evidence that such alien was naturalized, and, by inadvertence no record was made thereof; nor can the citizenship of an alien under such circumstances be presumed by proof of his having held real estate or of his having voted or held office or by other circumstances. Dryden v. Swinburne, 20 W. Va. 90.
Naturalization of a Father—Effect on Son.—By section 2172 of the revised statutes of the United States if the father be naturalized, while his son under the age of 21 is residing with him in the United States, his son will also- be considered a citizen ; but if at the time of the naturalization of the father the son is over the age of 21, such naturalization does not affect the character of the son as an alien, even though the father was naturalized before the first of Dec. 1873, when revised statutes of the United States went into operation. Dryden v. Swinburne, 20 W. Va. 90.
Naturalization of Aliens—Authority of the Court to Antedate Its Order.—No court of the United States has authority or power in naturalizing an alien to declare in its order that such alien shall be deemed a citizen from a time prior to the making of the order ; if such declarations made itis unauthorized and void so far as such declaration is concerned, and he is a citizen only from the time such order is made. Dryden v. Swinburne, 20 W. Va. 91.
Extension of City’s Boundary—Effect on Voter’s Privileges.—The Act of the Assembly, Sess. 1866-7, p. 635, extending the boundaries of the city of Richmond was held in Wade v. City of Richmond, 18 Gratt. 583, to operate upon the municipal relations of the inhabitants of the territory annexed to the city but in political elections they were still to vote as part of 1 the county of Henrico. !
Cession of Land for District of Columbia—Effect on Voters.—A person who, at the time of the cession of the District of Columbia to the United States, resided in that part of the county of Fairfax which, by the said cession, was comprehended in that district, and who has continued to reside there ever since, is not entitled to vote for members of the General Assembly; notwithstanding he was born in Virginia and possesses a freehold therein. Custis v. Lane, 3 Munf. 579.
Authority of Nominating Conventions to Judge of Qualifications of its Hembers.—In passing on the right of nominees for public office to appear on the election ballots, the supreme court in Marcum v. Ballot Commissioners, 42 W. Va. 263, 26 S. E. Rep. 281, recognizes the right of the convention making the nominations to judge of the election, qualifications, and returns of its own members, and will not go back of its action to inquire as to the right or title of delegates admitted by it as members.
Disqualification of Elected Officer—Effect as to His DefeatedOpponent.—Where two parties are opposing candidates for the office of sheriff, and the one receiving the highest number of votes disqualifies himself from holding the same by contracting to farm or sell the office or a portion thereof, such fact does not confer any interest in the office on the party receiving the minority of the votes cast at the election. State v. Matthews, 44 W. Va. 372, 29 S. E. Rep. 994.
Election of Alien—Incompetent Candidate-Effect.— If an alien and a citizen, eligible to office are rival candidates for the same office, and the alien receives a majority of the votes cast, though such alien be declared incompetent by the court in the contest between them, the citizen having received only a minority of the votes cannot be declared elected to the office ; but it must be held to be vacant. Dryden v. Swinburne, 20 W. Va. 91. See State v. Matthews, 44 W. Va. 372, 29 S. E. Rep. 994.
Justice Convicted of Felony—Forfeiture of Office— Effect of Pardon.—A justice of the peace was convicted of the felony of malicious stabbing, sentenced to the penitentiary, confined there, and then pardoned. 11eld, the conviction and judgment for this felony, was a forfeiture of his office of justice, and incapacitated him from afterwards acting under his commission; and the pardon neither avoided the forfeiture, nor restored his capacity. Com. v. Fugate, 2 Leigh 724.
Selling or Farming Out Office—West Virginia Statute Construed.—The provision of West Virginia Code 1868, ch. 7, sec. 5, concerning the selling or farming out of offices is held to mean that the parties are disabled from holding the term of office, the whole or part of which was thus sold or contracted to be sold, whether the term of office be an existing or a future term of office, not then in existence; but it is only the term of office contracted for, that these parties are disabled from holding; and their competency to hold a future office is not affected, unless the contract is to sell or farm a future office, and then he is incompetent to hold only the future office so sold or farmed. Dryden v. Swinburne, 20 W. Va. 91.
III. REGISTRATION.
Board of Registration—Acting in Judicial Capacity— Not Subject to Civil Action.—Acting under the provisions of | 8, ch. 78, Acts of 1866 (W. Va.), themembers of the County Board of Registration passing upon the right of a party to be registered or not, were acting in a judicial capacity, and if they acted within their jurisdiction, limited by the statute, they could not be amenable in a civil action. *104 Fausler v. Parsons, 6 W. Va. 486. It is said in this case, that it seems, therefore, settled that where the subject-matter and the person are within the jurisdiction of the courts, the judge, whether of a superior or inferior court, is not subject to a civil action for any matter done by him in the exercise of his judicial functions. He is not bound, at the peril of an action for damages, or personal controversy, to decide right, in matter either of law or fact; but to decide according to his own convictions of right, of which his recorded judgment is the test, and must be taken to be conclusive evidence.
Registration—Mandamus—When Proper. — Where under the Code of 1887, § 83, a voter appealed from refusal of the registrar to allow him to register, the answer of the registrar that the voter did not offer to qualify as to his right to vote, and that he was not entitled to vote, was held to be no defence to an application for mandamus to compel the registrar to transmit to the court the grounds relied on by the appellant, and the reasons for his refusal to register him. Coleman v. Sands, 87 Va. 689, 13 S. E. Rep. 148.
Right to Inspect Registration Books—Handamus.—A mandamus will lie to compel a registrar to allow any citizen to inspect, and take copies of the registration book, although he is allowed no compensation for so doing; the books being of a public nature, in which every citizen has an interest; and more, the statute provides for such inspection in plain language. Clay v. Ballard. 87 Va. 787, 13 S. E. Rep. 262.
Right to Inspect Registration Books—Mandamus.— Mandamus will lie to compel a custodian of the registration books to allow a petitioner to see the poll books in his possession, under Code of 1887, § 84, providing that the registration books shall be at all times open to public inspection, and section 132, of the Code, providing that the poll books, being lodged with the clerk, shall remain “for the use of persons who may choose to inspect” them. Keller v. Stone, 96 Va. 667, 32 S. E. Rep. 454.
Same—Liberal Construction of Statutes.—The provision of the Virginia Statute, Code 1887, § 84, which provides that the registration books “shall at all times be open to public inspection” was intended as a safeguard against fraud and must be liberally construed. Clay v. Ballard, 87 Va. 787, 13 S. E. Rep. 262.
IV. VALIDITY OF ELECTIONS—IRREGULARITIES.
Local Elections—Failure to Comply with Requirements of Statute—Effect—Parol Evidence.—Where a question was submitted to the voters of the county of Clarke, under Acts of 1879-80, p. 271, which made it the duty of the sheriff of the county to post notices of the election at every voting place in the county within a prescribed period preceding the election, the failure on the part of the sheriff to post the notices as required, invalidates the election. Haddox v. County of Clarke, 79 Va. 677.
It was also held in this case that on application for liquor license where- such an election has taken place, that parol evidence is- admissible to prove that notices of the election had not been posted, or that other plain and express provision of the statute, providing for the election had not been com. plied with. See Chalmers v. Funk, 76 Va. 717.
Concerning the Holding of Elections—Provisions Directory.—Many of the provisions of the law in regard to the manner of holding and conducting the elections and counting the votes and certifying the result, must be held to be' directory only, and intended to point out to inexperienced and ignorant ¡ persons, who are sometimes necessarily called upon to act as election officers, a plain, easy and direct way by which they are to attain the great end of their creation, viz.: to ascertain the true result of the election. And when the true result of a legal election has been ascertained, or can be ascertained, by the officers charged with the performance of this duty, no irregularity, mistake or even fraud committed by any of the officers conducting the election, or by any other person, can be permitted to defeat the fair expression of the popular^will as expressed in said section. Fraud in such case is never to be presumed, but must be particularly alleged, especially when the act charged as a fraud may be innocent. Loomis v. Jackson, 6 W. Va. 613, 690.
Directory Requirements—Non=CompHance with—Validity of Elections.—Any provision in regard to the matter of holding and conducting elections, counting votes and certifying the result, must be regarded as directory only, and when the true result has been or can be ascertained, no irregularity or even fraud by the officer of the election, or by any other person, can be permitted to defeat the popular will as expressed thereat. Loomis v. Jackson, 6 W. Va. 613. See Dial v. Hollandsworth, 39 W. Va. 1, 19 S. E. Rep. 557; also, Snodgrass v. Wetzel, 44 W. Va. 56, 29 S. E. Rep. 1035. In this last cáse the defeated candidate for clerk of the county court asked to have the vote from a certain precinct thrown out on the ground that the two poll clerks divided the ballots between them and each signed his own name and the name of the other clerk, instead of each signing his own name on each ballot, as directed by the statute; this was done, however, in the presence of the election judges and of each other. It was held to be a ministerial act and capable of being validly done by an agent. The court said, however, that if one person standing, by another, authorizes him to sign his name, it is not an act of agency, but is regarded as the very signature of the party himself, as if done by himself. And in the case of Dial v. Hollandsworth, 29 W. Va. 1, 19 S. E. Rep. 567, the court went so far, in order to uphold a fair result, that it ignored the act of officers of the election in appointing two poll clerks without a shadow of authority, and the acting of such unlawful poll clerks of the same political party in preparing the ballots of illiterate voters in separate rooms, with every opportunity to falsify the ballots.
Politics of Ballot Clerks—Directory Provision.— While the election law requires the ballot clerks to be of opposite politics, the mere fact that such is not the case is not alone sufficient to justify the exclusion of the poll from the court. Dial v. Hollandsworth, 39 W. Va. 1, 19 S. E. Rep. 557.
Commissioners Unlawfully Appoint Two Additional Ballot Clerks—Effect on Validity.—It is said further in the opinion of this case, that while, ordinarily, such misconduct on the part of the judges, unexplained, raises grave suspicions, and would require but a small amount of additional evidence to destroy the presumption of fairness and sustain the charge of corruption, yet, such conduct may be, as it was in this case, satisfactorily explained so as to excuse their conduct. Dial v. Hollandsworth, 39 W. Va. 1, 19 S. E. Rep. 557.
Directory Provisions.—Commissioners of election appointed at the May term of court when the statute' directed that they be appointed at the April term, were deemed validly appointed, the court consider *105 ing the provision directory only. Redd v. Supervisors, 31 Gratt. 695.
Irregularity in Election—Review by Certiorari—Cor= rected.—At an election for county officers, four persons who had not registered, were allowed to deposit ballots, bnt were subsequently and before thewhole vote was counted, declared by the election officers to be improper voters. On being called before the officers they were sworn as to the character of the ballots deposited by them, and four ballots were accordingly destroyed, which did not change the result of the election. The election officers certified certain parties as having received the highest number of votes, and the board of supervisors set the election aside because of the irregularity mentioned, and ordered another election. Subsequently, the parties who had been elected by the first vote, petitioned the circuit court for a writ of certiorari to supervise the proceedings of the board of supervisors. Held, that there was no irregularity in the election, in fact or in law, that would be sufficient to invalidate the election, according to the provisions of § 28, Acts 1863; and that it was a proper case for review by a higher court. Burke v. Monroe Co., 4 W. Va. 371.
Informalities in Holding Election — Effect. —Mere informalities on the part of election officers in holding, and ascertaining and declaring the result of an election, unless otherwise provided by statute will not vitiate an election in other respects fair and impartial. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163.
Election Valid Though Held and Certified by Only Two Judges.—An election held in Halifax county by only two judges of election and certified by them is valid, and the commissioners of election may be compelled by mandamus to count the vote so certified. Keesee v. Melvin, 3 Va. L. R. 285, decided Nov. 21, 1895. In note appended to this case it is said, that "the judgment in the principal case settled a question of general interest which is constantly arising. As no opinion was delivered it escaped the attention of the editors, but its importance to the general public is sufficient reason for reporting it at this late day.”
Irregularities Have No Effect—Unless Result of Election Is Thereby Changed.—It is affirmed in Loomis v. Jackson, 6 W. Va. 692, that no irregularity, or even misconduct, on the part of the election officers, or other persons, will vitiate an otherwise legal election, unless the result thereof has been thereby changed, or rendered so uncertain as to make it impossible to ascertain the true result. A different rule would make the manner of performing a public duty, more important than the duty itself.
Clerical Error—Does Not Invalidate Election.—A mistake entered in the record of the county court in relation to the date of an order concerning an election will not invalidate the election. Thomas v. Com., 90 Va. 92, 17 S. E. Rep. 788.
Conformity with Statute—Substantial Compliance-Presumption of Fairness.—it is necessary that all the details required by the statute in conducting an election should appear on the record; bnt if it appears from the record that the county court, with the poll books, tally sheets, and certificates of election from the various precincts before it, has canvassed the returns, and declared the result, it will be presumed to have acted rightly, unless the contrary be made to appear. Minear v. Tucker Co., 39 W. Va. 627, 20 S. E. Rep. 659.
Same—Election Concerning Issue of Municipal Bonds. —In a municipality having less than 600 voters, an election confined solely to the question of the issue of municipal bonds is not invalid because conducted in the mode prescribed for the election of municipal officers, in the absence of political or party nominations. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163.
Election under Statute Afterwards Repealed—Effect.— An election concerning the sale of spirituous liquors, held July 1st, 1886, under act of Feb. 26, 1886, was not invalidated by repeal of that act by the adoption of the Code, § 4202, May 1st, 1888; Thomas v. Com., 90 Va. 92, 17 S. E. Rep. 788.
Provision by Implication—Service of Sheriff in Special Election.—The order of the county court directing the sense of the qualified voters to be taken, directs the election to be held by the commissioners of election in conformity to law. Though the order does not expressly require the sheriff to act, so far as the agency of the sheriff was rendered necessary by the law, although not named in the order, he was within its operation. Redd v. Supervisors, 31 Gratt. 695.
V. COMMISSIONERS OF ELECTIONS—THEIR DUTIES, ETC.
Nature of the Tribunal.—The county commissioners acting in special session to ascertain the result of a contested election, are an inferior tribunal proceeding in a summary manner and not according to the course of the common law. This tribunal is a creature of, and its proceedings are governed entirely by the statute; and no provision is made for a review of its action or proceedings upon motion, appeal, writ of error, or supersedeas. Chenowith v. Commissioners. 26 W. Va. 234.
Commissioners of Election—Their Duties Defined.— The commissioners of election are the body to compute and ascertain the number of registered voters in the county, the number of votes cast at the election, to separate them and ascertain for whom, or for what purpose the majority of votes were cast. In ascertaining and reporting the number of registered voters in the county they are to be guided and controlled by the registration books. But where the register had recorded therein the death or removal of a person registered, it was proper to omit his name from the count. Redd v. Supervisors, 31 Gratt. 695; Brown v. Randolph County Court, 45 W. Va. 827, 32 S. E. Rep. 165.
Powers and Duties of Commissioners—Election Returns—Mandamus.—The powers and duties of commissioners of election, as prescribed by §§ 133, 134, 135, 136, 137 of the Code are to ascertain the results of elections from the face of the returns, if regular, and if not regular, to summon any clerks, judges, etc., deemed necessary to investigate any returns which require it and cause the irregularity to be corrected as required by the statute, and then to ascertain the result from the correct returns. When the result has thus been ascertained and signed by the required number of commissioners, and attested by the clerk, and had an abstract of the votes cast annexed thereto, the duties of the commissioners are completed. And when returns have been made and the result ascertained in the manner thus prescribed by law the commissioners cannot go behind the returns and throw out a precinct. If they do this, without authority, the clerk maybe compelled by mandamus, to issue the certificate of election to the person elected by the regular vote. McKinney v. Peers, 91 Va. 684, 22 S. E. Rep. 506.
*106 Same—Manner of Counting Ballots.—It is the legal 'duty of the hoard of election canvassers to count all ballots or parts of ballots where the intention of the voter appears from the face of the ballots, though not marked or erased in the plain manner directed in the statute, and to reject all ballots or parts of ballots where such intention does not appear from the face of the ballots. If, from the face of his ballot, the intention of the voter is apparent as to his choice of candidates for any office, his vote should be counted as to such office, although his intention as to other candidates for other offices be not ascertained, and the ballot invalid as to them. It is further their duty to make a careful record of every ballot rejected by it, with the reason therefor, and the identification of such ballot as a part of such record. Dunlevy v. County Court (W. Va.), 35 S. E Rep. 956.
Acts of Commissioners—Ministerial and Judicial— Prohibition.—While many of the acts of the commissioners, while sitting as a board of canvassers, after an election, are merely ministerial, they are not all so; and where such tribunal, clothed by the statute with both ministerial and judicial powers, is merely exercising its ministerial functions, to its action in such matters prohibition will not lie; but when it is exercising its judicial functions, and is proceeding in excess of its judicial powers, or is usurping judicial powers which do not belong to it, to such action a writ of prohibition will lie. Brazie v. Fayette Co. Com’rs, 25 W. Va. 213.
Same—Errors of Canvassers.—Mere errors and irregularities of such commissioners, while proceeding within their jurisdiction, are not subject to prohibition. Fleming v. Com’rs, 31 W. Va. 608, 8 S. E. Rep. 267.
Judicial and Ministerial Duties.—Aside from the quasi judicial functions necessarily incident to the duties of county commissioners in determining that the ballots, poll-books and certificates of election returns, the legality of which are in question, are genuine, that they are in fact the returns and substantially in the form prescribed by the statute, and to correct them if necessary and have them put in the proper form, the duties of said commissioners are purely ministerial, and their judicial functions are limited to the acts prescribed by the statute. Brazie v. Com’rs, 25 W. Va. 213; Chenowith v. Com'rs, 26 W. Va. 230; Fleming v. Com’rs, 31 W. Va. 608, 8 S. E. Rep. 267.
It had been established by decisions of the W. Va. court, prior to the enaction of the present election law—Brazie v. Com’rs, 25 W. Va. 213; Chenowith v. Commissioners, 26 W. Va. 230; Alderson v. Commissioners, 31 W. Va. 633, 8 S. E. Rep. 274—that election officers had conferred upon them both ministerial and judicial powers and that certiorari, and not mandamus, was the proper remedy to review other proceedings.
Board of Supervisors—A Judicial Tribunal—Power Limited by the Statute.—By the provisions of ch. 3, Code of W. Va. 1868, in conferring upon the board of supervisors the power to call and examine witnesses, to compel the production of papers, to open, inspect, examine and count the ballots cast at an election, and to make all orders deemed necessary to enable them to discharge their duties; and that their determination upon that subject should be entitled to the force and validity of a judgment until impeached on proper grounds, it was the evident intention of the legislature to establish a judicial tribunal. Loomis v. Jackson, 6 W. Va. 616. But it was further held in this case that this special court, having no common-law jurisdiction cannot permit amendments of notices and specifications after the time has passed when the party themselves might be allowed to correct omissions and supply defects.
Whether Precinct Commissioners, etc., Were Sworn— Judicial Question.—When commissioners were assembled, under our statute, in special session, after an election, to canvass the votes cast, and the question was presented to them whether the precinct commissioners, canvassers, and clerks at a certain voting place were sworn, such question was a judicial one, within their jurisdiction, and whether on the evidence before them they decided rightly or wrongly, could not be th e basis for an application for a writ of prohibition. Fleming v. Com’rs, 31 W. Va. 608, 8 S. E. Rep. 267.
Commissioners of Election—Hinisterial Officers.—The five commissioners of election, provided for under §§ 40, 41, 42, of the Virginia statute, are merely ministerial officers, whose duty is to take the votes, count them, and certify the result; therefore, since a writ of prohibition cannot be issued to a ministerial officer, it could not properly be issued to such commissioners. Ellyson, ex parte, 20 Gratt. 10.
Duties of Commissioners—Virginia Law.—The duties of commissioners of election are entirely ministerial, and if they fail to discharge them, they may be compelled to do so by mandamus. McKinney v. Peers, 91 Va. 684, 22 S. E. Rep. 506. See also, Keesee v. Melvin, 3 Va. L. Reg. 284; Brown v. Randolph Co. Court, 45 W. Va. 827, 32 S. E. Rep. 165. See also, Dunlevy v. County Court (W. Va.), 35 S. E. Rep. 956.
A board of canvassers cannot make law but they must obey it as it is made for them. Alderson v. Commissioners, 32 W. Va. 454, 9 S. E. Rep. 863.
Power of Commissioners in Canvassing Returns— Presumption of Fairness.—If no ballots are returned, or if those returned are shown to be forged or fraudulent, and not the true ballots cast at the election, the commissioners have the power to reject and refuse to count them, notwithstanding the returns are “duly and legally certified”; as the county court commissioners are officers duly elected by the people, and in passing upon the result of an election act in a quasi j udicia 1 capacity. Fleming v. Commissioners, 31 W. Va. 608, 8 S. E. Rep. 267 ; Brazie v. Commissioners, 25 W. Va. 213, 221; Chenowith v. Commissioners, 26 W. Va. 230. In such case it must be presumed that they acted rightly and within their legal authority, until the contrary is plainly made to appear. Loomis v. Jackson, 6 W. Va. 613 ; Halstead v. Rader, 27 W. Va. 806.
Competency of Commissioners to Recanvass Returns —Review by Certiorari.—County commissioners in canvassing returns of an election for congress, on a recount, sign various exceptions for alleged errors taken by one of the candidates voted for, and the count is completed, and result declared. The party excepting obtains a certiorari to review the action of commissioners, and the circuit court reverses it, and remands the matter to them, with directions to again perform the work of canvassing the returns. Held, that commissioners are not functus officio, but are yet competent to canvass the returns in compliance with the order of the circuit court. Alderson v. Com’rs, 32 W. Va. 454, 9 S. E. Rep. 863.
Commissioners—Certificate of Result—Delivery to County Clerk—Compliance with Statute.—The requirements that the commissioners of election of *107 each place of voting shall make out and sign a separate certificate of the result of the vote and deliver the same to the clerk of the county court within four days thereafter (Sunday included), is mandatory only; and if it is not complied with at any place of voting that fact vitiates the determination of the question voted for whether the county-seat shall be relocated by the votes cast at such election; and this provision cannot be regarded as substantially complied with, if the commissioners of election at each place of voting only insert the result of the vote at each precinct in the certificates, or in one of the certificates which they are required to make and sign. Welch v. County Court, 29 W. Va. 63, 1 S. E. Rep. 337. See Redd v. Supervisors, 31 Gratt. 695.
Right of Bach Candidate to Separate Recount of Vote by Commissioners— Concerning whether each candidate shall have the right to a recount of the vote cast, it is said in Chenowith v. Com’rs, 26 W. Va. 230, that the reasonable and practicable rule would seem to preclude such right after there had been a recount at the instance of some other candidate at the same election.
The county commissioners, in reviewing the returns of an election after they have opened the sealed packages returned by the district commissioners, recounted them upon demand of an opposing candidate and again sealed up the ballots, cannot under the provisions of § 21, ch. 155, Acts 1882 of W. Va. upon a subsequent demand of either of the said opposing candidates reopen the packages and recounttheballotsthe second time. Chenowith v. Com’rs, 26 W. Va. 230.
Power of Canvassers to Go Behind Returns.—The case of Brazie v. Commissioners, 25 W. Va. 213, holds that canvassers have no power to go behind the returns to inquire as to fraud or illegality in the election ; but that their duty is to pass upon the return as certified to them from the several voting precincts of the county which they are required to review. It was further held in this case that the 26th sec. of ch. 155, Acts 1882, has no application to the duties of commissioners as canvassers of an election, the powers therein conferred apply only to the final judges of election in case of contested election. Brazie v. Com’rs, 25 W. Va. 213.
Irregularities, etc., in Elections Presumed to Have Been Corrected by Supervisors—Effect.—All errors, irregularities and illegalities committed at the election, or existing at the time of the examination of the returns by the board of supervisors as provided for by statute, must in absence of averments and proofs to the contrary, be taken and held to have been corrected by such board. Prom this it follows that any specification which alleges errors, irregularities and illegalities or malconduct on the part of the officers, or other persons conducting the elections, committed before the action of the board of supervisors was had thereon must be held insufficient, unless such errors are further alleged to have been carried into and formed a part of the election as certified by the board of supervisors. Loomis v. Jackson, 6 W. Va. 616.
Return of Poll by Commissioners—Presumption of True Result.—The return of a poll by the commissioner of the election is prima facie the true result of : the election and will not be reversed by the court because of misconduct of the election officers or other persons, unless it plainly appears that such misconduct changed the result of the election. Dial v. Hollandsworth, 39 W. Va. 1, 19 S. E. Rep. 557; 1 Minear v. Tucker County, 39 W. Va. 627, 20 S. E. Rep. 659.
fleeting of Commissioners—Requirements of Notice. —Where the commissioners of a county meet as a canvassing board, five days after an election, for the sole purpose of declaring the result thereof, counting the votes, etc., as required by statute, no notice is required to be posted as to the object of the meeting. But notice is necessary when special sessions are to be held for other purposes. Minear v. Tucker County, 39 W. Va. 627, 20 S. E. Rep. 659.
Action of Ballot Commissioners—Subject of Review.— The action of ballot commissioners is, under the statute, subject of review by the courts. Marcum v. Ballot Com’rs, 42 W. Va. 263, 26 S. E. Rep. 281.
Right to Certificate of Election—'Statement from Canvassers.—Although the whole matter of an election may be reopened by the tribunal which may try a contest for an office, yet the person really elected has the right to have the certificate of election given to him by the canvassers, or proper evidence of the correct number of votes he received, to be presented to the officer having the right and by law required to give the certificate. Alderson v. Com’rs, 31 W. Va. 633, 8 S. E. Rep. 274.
Refusal of Canvassers to Act—Mandamus.—If the commissioners of the county sitting as a board of canvassers, after an election, refuse to sign bills of exceptions to their ruling, when requested to do so by a candidate voted for at the election, they will be required by mandamus to settle and sign such bills of exceptions. Alderson v. Commissioners, 31 W. Va. 633, 8 S. E. Rep. 274; Dryden v. Swinburne, 20 W. Va. 90; Poteet v. Commissioners, 30 W. Va. 58, 3 S. E.Rep. 97; Douglass v. Loomis, 5 W. Va. 542.
Same—Alternative Mandamus—Inhibiting Adjournment.—When, in such case, a petition praying a mandamus to issue inhibiting the commissioners, until the further orderof the court, from finally adjourning, or certifying the result of the election, so that the peremptory mandamus, if issued, will be effective; and, when the court is informed that the mandamus has been obeyed, the inhibition should be wholly removed. Alderson v. Commissioners, 31 W. Va. 633, 8 S. E. Rep. 274.
Bills of Exceptions—When Commissioners nustSign. —Under the provisions of § 3, c. 153 of the Acts of 1882 (W. Va.), which states that, in any case before a county court, etc., or other inferior tribunal in which certiorari would lie, the majority of the commissioners or the justice or officer shall, on request of either party, certify the evidence and sign bills of exceptions, the commissioners of a county sitting as a board of canvassers, after an election, must, on request of one of the candidates for election, sign a bill of exceptions to their ruling, and if they refuse they will be required to do so by mmdamus. Fleming v. Kanawha County Com’rs, 31 W. Va. 608, 8 S. E. Rep. 267. See also, Cunningham v. Squires, 2 W. Va. 422.
Rights of Candidates—Bills of Exception—Review.— Any candidate yoted for at the election in question has the right to be present in person or by attorney at the recount of the votes and request the commissioners to give him a bill of exceptions to their rulings against him; he thus becomes a party to the proceedings and has the right to have the rulings of such commissioners reviewed by certiorari. Aiderson v. Com’rs, 31 W. Va. 633, 8 S. E. Rep. 274.
Canvassing Election Returns for Location of County Seat—Proper Tribunal.—It was held in Welch v. County Court, 29 W. Va. 63, 1 S. E. Rep. 337, that *108 returns of election on the location of a county seat must go before the county court to be canvassed, and to have the result declared, and not before the board of canvassers. Such was the law under ch. 5, § 15, Acts of 1881 (Code 1887, ch. 39, § 15). See Poteet v. Commissioners, 30 W. Va. 58, 3 S. E. Rep. 97; also, Brown v. Randolph County Court, 45 W. Va. 827, 32 S. E. Eep. 165.
Province of County Court Canvassing Election Re» turns.—A county court as such, canvassing the returns of an election upon a vote upon relocation of a county seat, is an entirely different tribunal from a board of canvassers, having wider function. It canvasses the returns upon the certificates, can recount ballots, hear evidence of fraud and illegality, and do what, in the case of candidates for office, could be done by that court in hearing a contest. Brown v. Randolph County Court, 45 W. Va. 827, 32 S. E. Rep. 165; Poteet v. Commissioners, 30 W. Va. 58, 3 S. E. Rep. 97.
VI. OFFICERS ELECTED-TERM OF OFFICE.
Election of Judge—Limits of His Term—Defined.— Manchester was incorporated as a city in 1874, and having more than five thousand inhabitants was entitled to have a judge of its hustings court. In March, 1874, C was elected and qualified as judge of said, court. Held, that this being the first judge of this coiirt, under the Constitution, C’s term of office commenced on the first of January, 1875, and would continue until the 31st of December, 1880; and he was under the Constitution authorized to act as judge from the time of his qualification to the commencement of his term. Ex parte Fisher, 33 Gratt. 232. See also, In re Broadus, 32 Gratt. 779; Ex parte Meredith, 33 Gratt. 119; McCraw v. Williams, 33 Gratt. 510.
Judges —Election to Fill Vacancy —Expiration of Term.—in December, 1874, E was elected by the legislature judge of the county courts of G and B counties, and on the 12th of the same month commissioned as such; the commission stating that he was elected to fill the unexpired term of his predecessor. In December, 1879, W was elected judge of the same counties, and commissioned as such on the 20th of the same month. Without objection on the part of E, W entered, at once, upon the duties of the office, and E qualified as an attorney and practiced in both of the courts over which W presided, until the April term, 1880, when the court of appeals having decided that the terms of all the county judges in Virginia, whether elected to fill vacancies or not, commenced on the first day of January next 'following their appointments, and were for the full term of six years, and fixed by the Constitution, E appeared and protested thathe was the lawful judge. This claim W refused to recognize, principally on the ground that E, by acquiescing in the assumption' of the office by W, and becoming a practicing attorney in his court, held an office incompatible with the office of judge, and by this conduct had forfeited and abandoned his said office. On quo warranto by E against W, held, E was entitled to the office, and the fact that he only yielded to the legislative and executive construction of the constitution, until the question was settled by the supreme court, was no abandonment or forfeiture of his office. The B and G County Judge Case, 33 Gratt. 443. See McCraw v. Williams, 33 Gratt. 510; also, Watlington v. Edmonson, 10 Va. Law J. 286.
Supporting this doctrine, see Ex parte Meredith, Ex parte Harrison, 33 Gratt. 119. In Howison v. Weeden, 77 Va. 704, which was a petition to compel! the defendant to surrender the office of judge, it was held that the parties to the controversy were privies to the case of Meredith, Ex parte, etc., supra and that the decision therein, not having been reversed was binding on them. See also, Estes v. Edmondson, 33 Gratt. 510; Montague v. Massey, 76 Va. 307; Neal v. Allen, 76 Va. 437.
The above cases, however, have been overruled in the subsequent case of Burks v. Hinton, 77 Va. 1, where it was held by a majority of the court of appeals that the constitution of Virginia empowers the legislature to prescribe the manner of filling all vacancies in office, and to declare when an office is vacant, in cases not especially therein provided for, and makes no exception as to the office of a judge; that, therefore, the joint resolution adopted by the general assembly, December 18, 1872, that all elections by the general assembly to fill vacancies in the office of a judge shall be for the unexpired term of his predecessor, is constitutional, and consequently Judge Burks, who was elected in 1876 to fill the vacancy in the court of appeals, caused by the death of Judge Bouldin, was not chosen for the regular term of twelve years, but only for the residue of Judge Bouldin’s term, which expired 31st December, 1882. See Jameson v. Hudson, 82 Va. 279; Shumate v. Supervisors, 84 Va. 574, 5 S. E. Rep. 570; also, 4 Min. Inst. (2d Ed.) 227 et seq.; (3d Ed.) 256 et seq.; Fitzpatrick v. Kirby, 81 Va. 467. See also, Howison v. Weeden, 77 Va. 708; Watlington v. Edmonson, 10 Va. Law J. 286.
Term of Judicial Offices in Virginia.—It is said in Watlington v. Edmonson, 10 Va. Law J. 286, that it is well settled by the repeated decisions of this court that the terms of office of the different classes of judges in this state begin and end at fixed and definite periods; and that after the expiration of those periods the incumbents can only discharge the duties of the office until their successors have qualified.
Claim of Salary as Judge after Removal from Office by Legislature.—On petition for mandamus to compel the board of supervisors of Fauquier county to issue a warrant upon the treasurer of said county for $1,250, which sum the petitioner alleges is due him as his salary as de jure judge of the county court from March, 1884, to January, 1886. The petition alleges further that upon presentation of his claim, the respondents refused to recognize him as a judge, on the ground that he had been removed from office by the legislature, and one Edward M. Spilman elected in his stead. He insists, however, that such alleged removal was in violation of the constitution and without legal effect for several reasons. It was held in the case that the judgment determining that the petitioner had no title to the office, necessarily determined that he was no longer entitled to receive its emoluments, though no claim for salary was specifically made, and could not have been regularly made, in that proceeding. And stated further in the opinion that an office is a right and correspondent duty to exercise a public or private trust, and to take the emoluments belonging to it; and as was said in Blair v. Marye, Auditor, 80 Va. 485, “the salary follows the office as the shadow follows the substance.” Shumate v. Supervisors, 84 Va. 574, 5 S. E. Rep. 570.
Usurpation of Office—Proceeding by Quo Warranto —Interested Party.—In the proceeding by way of an information in the nature of a writ of quo warranto instituted by the defeated candidate in election of *109 •sheriff, against the successful candidate, who had forfeited his right to hold office by contracting to sell or farm the office, and who continued to claim right thereto; the latter being claimed in the information to have intruded into and usurped the 'Office of sheriff of the county. Held, that such proceeding must be at the relation of some person interested, otherwise than as a citizen and taxpayer (whiclr was not the case here), unless such proceeding is instituted at the instance of the attorney general or the prosecuting attorney of the county. State v. Matthews, 44 W. Va. 372. 29 S. E. Rep. 994.
Resignation from Office—Not a Hatter of Right.—A registrar is not at liberty to resign at his pleasure; his resignation must be accepted in order to have effect, and until it is accepted, it is inoperative, and Jhe remains in office. Coleman v. Sands, 87 Va. 689, 13 S. E. Rep. 148. It is held further in this case, that it is not true that an office is held at the will of either party. It is held at the will of both. Generally resignations are accepted, and it may be that it is generally believed that resigning is a matter of right; but it is otherwise. The public has a right to the services of all its citizens, and may demand them in all civil departments as well as in the military.
De Facto Officers—Validity of Their Acts.—A was elected in ."January, 1880, judge of the county court of Halifax and commissioned by the governor. Believing that his term of office commenced immediately he proceeded to hold court and transact business. Held, he was a judge de facto; and his judgments were as valid and binding, as if he had been a judge de jure. McCraw v. Williams, 33 Gratt. 510 ; Roche v. Jones, 87 Va. 484, 12 S. E. Rep. 965. See Maddox v. Ewell, 2 Va. Cas. 59. As to who are de facto officers, see Dial v. Hollandsworth, 39 W. Va. 1, 19 S. E. Rep. 557, 1 Mun. Corp. Cas. 222.
Acts of De Facto Officers—Valid.—The acts of defacto municipal officers, within the scope of their authority and under color of law, are valid and binding, in the absence of clear proof that they are not the de jure officers oí such municipality. Knight v. Town of West Union, 45 W. Va. 194, 32 S. E. Rep. 163.
VH. ELECTION CONTESTS.
Fraud in Election—Manner of Obtaining Relief.—If any candidate claims that an election was fraudulent or in any wise illegal, or that ballots were incorrectly counted against him, he must get relief by contest as provided for in the statute. Brazie v. Commissioners, 25 W. Va. 213. See also, Brown v. Randolph County, 45 W. Va. 827, 32 S. E. Rep. 165.
Party Elected—Entitled to Hold Office During a Contest.—The party who has been elected to a county office and received a certificate of his election from the proper officer and has legally qualified is entitled to hold the office pending a contest for the same by another party. Swinburn v. Smith, J., 15 W. Va. 483.
Petition—In Election Contest—To Whom Addressed— Requirements—Allegations and Proofs.—A petition, in a contest for the office of judge should be addressed to the special court provided by statute to try such cases, and not to the governor of the state. It ought not to contain any prayer for relief beyond what is found in the authority of the court to afford. To invoke the authority vested in the governor by sec. 13, ch. 6, W. Va. Code 1868, it is necessary that the contestant should file with the governor a petition with copies of his ground of contest, notice and specifications ; and such petitions must remain in the governor’s office, in order that he may have evidence upon which to justify his official action. Loomis v. Jackson, 6 W. Va., 615.
The allegations and the proofs must agree. Therefore a contestant, either in his petition or notice of the ground of contest and specifications, must show directly what was the result of the election as declared by the returning officers and in what manner and to what extent the result will be affected by the correction of errors complained of in the specifications. Loomis v. Jackson, 6 W. Va. 615.
Right of Taxpayer or Voter to Contest Election.— A taxpayer or a voter oí a county, merely as such, may appear before the county court, and in any legal mode contest the returns of and vote upon a relocation of a county seat for fraud, irregularity, or illegality, or other ground which in law would change the result or overthrow the vote, in whole or part. Brown v. Randolph County Court, 45 W. Va. 827, 32 S. E. Rep. 165 ; Poteet v. Commissioners, 30 W. Va. 58, 3 S. E. Rep. 97; Welch v. County Court, 29 W. Va. 63, 1 S. E. Rep. 337; Hamilton v. County Court, 38 W. Va. 71, 18 S. E. Rep. 8.
Contested Election—Statute Construed—Mandamus. It was held in Richardson v. Farrar, 88 Va. 760, 15 S. E. Rep. 117, that sec. 160. Virginia Code, 1887, commands that returns of county elections be, upon complaint of undue election and false returns by fifteen or more voters, and counter-complaint, if any be filed, subject to the inquiry, determination and judgmentof the county court, which shall proceed in such case, without a jury, and on the testimony to decide the same upon the merits according to the constitution and existing laws ; that in such a contest the quashing and dismissal of a joint complaint of undue election, and false return against three at the same election, on the ground of misjoinder of the defendants was erroneous, because the statute does not limit the contest to one; and that mandamus would lie to compel the court to proceed to hear and determine the contest.
Election Contests Decided by Special Courts—Manner of Providing.—Under ch. 6, section 15, of the W. Va. Code 1873, it is provided that when the election of the secretary of state, treasurer, auditor, attorney general, or a judge of the supreme court of appeals, or a circuit court, is contested, the case shall be heard and decided by a special court consisting of three persons, one of whom shall be appointed by the person declared elected, another by the contestant, and the third by the governor, which court shall proceed to hear and determine the case and certify their decision to the governor; it was held that, in order to authorize the governor to act in such a case, it is necessary that the contestant should file with him a petition, with copies of his : grounds of contest, notice, and specifications, and such petition must remain in the governor’s office as an evidence upon which to justify his official action. Loomis v. Jackson, 6 W. Va. 613.
Authority of Special Court—What May Be Required of It.—Under section 13, ch. 6, Code of W. Va. 1873, providing that cases of contested elections of a circuit court judge and other officers, shall be tried by a special court, the manner of forming which is therein prescribed, each court has the right to determine all questions touching the regularity and legality of the acts of the officers conducting the election and making and certifying the returns thereof, and it may be, in a proper case made, to reexamine all, or any part of the election returns which require it, and if error be found therein, to *110 correct them according to the law and the truth. Loomis v. Jackson. 6 W. Va. 613.
Election Contest—Jurisdiction of City Council—Section 1030, Va. Code.—The council of the city of Richmond, under the authority of section 1030 of the Code is the judge of the election, qualifications and returns of its members, and also has the power to order elections and to fill all vacancies in that body. The hustings court of said city has no jurisdiction to decide a contest over an election of a member of that bod5v, even though the contestant alleges that he cannot obtain justice before it. Mitchell v. Witt, 98 Va. 459, 36 S. E. Rep. 528, 6 Va. Law Reg. 351.
Jurisdiction of County and Corporation Courts.— Under Session Acts 1870, p. 97, sec. 69, relating to general elections, the county or corporation courts have jurisdiction to vacate an illegal election, though but one person was voted for at such election. Ex parte Ellyson, 20 Gratt. 10. It was held in this case that, although a person voted for at an election, having been declared elected by the commissioners, and their report certified by the clerk, had entered upon the discharge of the duties of his office, the court might vacate the election, and direct another election to be held. See Ferguson v. West, 16 Gratt. 270; Mayo v. James, 12 Gratt. 17.
Failure of Contestants to Subscribe an Oath—Effect. —Under an act which provided that the returns of county elections should be subject to the inquiry of the county court upon the complaint of fifteen qualified voters, to which two must take and subscribe an oath, the omission to subscribe, as required, does not deprive the court of jurisdiction; such provision not being declared essential to the proceedings by the statute. Nelms v. Vaughan, 84 Va. 696, 5 S. E. Rep. 704.
County Court—Authority to Give Judgmentfor Costs —Statute.—in cases of contested elections before the county court, underacts of Virginia 1852, ch. 71, pp. 64,65, the county court has no authority to give judgment for costs to either party. West v. Ferguson, 16 Gratt. 270. It was held that this case could not be considered as a “motion,” or an “action,” or an “interlocutory order or proceeding,” under the statute of 1852, where costs might be recovered.
Jurisdiction of Supreme Court — Requirements of Constitution.—The record showing that the office of clerk of the circuit court of Kanawha county is of greater value than one hundred dollars, the supreme court of appeals has appellate jurisdiction under sec. 3, art. 8, of the constitution of W. Va., to review by writ of error the decision of the circuit courts in the case of contested election to that office. Dryden v. Swinburn, 15 W. Va. 234.
Subscription to Stock of Internal Improvement Company-Equity Jurisdiction.—In Redd v. Supervisors, 31 Gratt. 695, it was held that although a mode for contesting the returns of an election or decision of the voters of the county or corporation upon the question whether the county or corporation shall subscribe to the stock of an internal improvement company is provided by statute. Acts 1874, ch. 37, a court of equity still has jurisdiction of the question, upon a bill filed by fifteen or more of the citizens and taxpayers of the county or corporation, and to enjoin the issue of bonds of the county or corporation in payment of said subscription if the proceeding has not been properly conducted.
Power of the Legislature — Curative Acts.—The legislature may by a subsequent act correct mistakes in a local election, legalize the proceedings, if they are irregular, and so confirm th e result. Redd v. Supervisors, 31 Gratt. 695. It is said in the opinion of this case that “mistakes and irregularities are of frequent occurrence in municipal elections, and the state legislatures have often had occasion to pass laws to obviate such difficulties. Such laws, when they do not impair any contract, or injuriously affect the rights of third parties, are never regarded as objectionable, and certainly are within the competency of the legislative authority.” See Bell v. Farmville, etc., Co., 91 Va. 112, 20 S. E. Rep. 942; Supervisors v. Randolph, 89 Va. 614, 16 S. E. Rep. 722.
Relocation of County Seat — Election Concerning— Contest.—The fifteenth section of chapter 5 of the Acts of 1881 (Worth’s Amended Code, ch. 39, § 15), provides that the clerk of the county court shall lay before the county court, at its next session after an election wherein a vote has been taken on the relocation of a county seat, the separate certificates of the precinct commissioners of the vote on this question at each precinct, and the law provides: “The said court shall thereupon ascertain and declare the result of said vote and enter the same of record.” Held, under this law any voter of the county has a right to appear and contest the validity of these returns, and ask that the court go behind these returns and ascertain what was the actual legal vote cast at such, election for and against relocation of the county seat, and has a right to demand that the evidence he offers be heard on this question; and, if the court refuses to permit him to be heard, he has a right to demand of them to settle and sign a bill of exceptions, setting out the refusal of the court to permit him to be heard, or to introduce any evidence on the question before them. And if they refuse to sign and settle such bill of exceptions, the circuit court may by mandamus compel them to do so, and then perfect their record so that the action of the county court in this matter may be reviewed on writ of certiorari by the circuit court. Poteet v. County Com’rs, 30 W. Va. 58, 3 S. E. Rep. 97: Brazie v. Com’rs, 25 W. Va. 213; Alderson v. Com’rs, 31 W. Va. 633, 8 S. E. Rep. 279. See Brown v. Randolph County Court, 45 W. Va. 827, 32 S. E. Rep. 165.
Abolition of County Court—Effect on Election Contest before It.—In the case of Fowler v. Fowler, 22 W. Va. 106, which was a contest for the office of prosecuting attorney, the contestant having within the manner prescribed by law given notice to the contestee of his intention to contest the election of defendant to the office in question, counter notice also having been legally served, both parties appeared before the county court at the November term 1880, and on their several motions the said notices were docketed in the court; no other term of the court being held for more than a year when the county commissioners held their first term, at which no proceedings in this contest were had. At the March term the court refused to proceed with the trial of the case on the ground that, at the said November term the county court had ceased to exist, and for that cause no contest was pending which could be tried. The circuit court having upon writ of certiorari reversed the judgment of the county court and remanded the cause to be further proceeded in according to law, its decision was sustained by the supreme court.
Giving of Notice—Requirements of Statute—Right of Amendment—it is the manifest intent of the statute that a party proposing to contest the election of one who has been declared elected, shall, within a period of time precisely limited, give to him whose election he proposes to contest full information *111 of the case upon which he will proceed to trial. This the contestant does by a notice and specification of the particular facts which constitute his case. And he is expressly authorized to amend his case irom time to time, subject to the limitation prescribed, by giving additional notices and specifications. The respondent may, within thirtsT days from the date of service of contestant’s notice, serve a return notice, with specifications upon the contestant; and thus issues of fact are made up, and all the testimony is taken upon these issues, and afterwards a court is organized to try them, and as in other judicial controversies, the making up of the issues must precede the taking of testimony. Harrison v. Lewis, 6 W. Va. 713; Loomis v. Jackson, 6 W. Va. 613.
Return Notice—New Facts May Be Given—Statutes. —As new facts or the cine to discovery of them may be for the first time disclosed by the return notice, new notices with additional specification of new facts discovered after the service of the original notice and specification, and after the expiration of the sixty days allowed, may be given by the contestant within the forty days allowed for the taking of depositions, subject always to the limitation that reasonable notice of the taking of depositions shall be given to the adverse party as required under sec. 5 and 8, of ch. 6. Code W. Va. 1868; Loomis v. Jackson, 6 W. Va. 613.
Section hi, Ch. 6, W. Va. Code 1868, Construed.—Tt is the evident intention of sec. 11, ch. 6, of the W. Va. Code 1868, that every contested election provided for therein should be tried within a comparatively short space of time; and that it was not intended to permit an incumbent to hold his office beyond the limit of its constitutional term and thus enable him to carry on a protracted and dilatory contest with the person certified to have been elected to that office. Loomis v. Jackson, 6 W. Va. 613.
Requirements of Notice under West Virginia Statute. —By act of 1872-3 (W. Va.), ch. 118, it is necessary to set forth in the notice, not only the number of votes alleged to be illegal, but also the names of the parties who cast them. See Dryden v. Swinburn, 15 W. Va. 234. See also, supporting the first statement, Loomis v. Jackson, 6 W. Va. 676.
It is also necessary under the W. Va. statute, to state the objections to votes alleged to have been illegally received or rejected. Dryden v. Swinburn. 15 W. Va. 363; Halstead v. Rader, 27 W. Va. 813.
Notice-Must State Cause of Contest.—A notice which does not state the cause of contest at least in substance, is a nullity. It is no more than the blank paper, and therefore cannot be the snbj ect of amendment. Loomis v. Jackson, 6 W. Va. 617; Halstead v. Rader, 27 W. Va. 818.
Election Contest—Statute—Not Repugnant to Constitutional Amendment—Sec. 30, 31, 32 and 33 of the Acts of Legislature, 1872-3, prescribing the time and manner in which the election of county and district officers might be contested were held not repugnant to the provisions of the amendment, art. 8 of the constitution of W. Va. and continued in force and effect after its adoption. Fowler v. Thompson, 23 W. Va. 106.
Where Total Vote oí Precinct Is Rejected.—Where the entire vote of a precinct is wrongfully rejected, it is not necessary to the notice to give a list of the votes and the objections to each, but it is essential that it should name the precinct, the votes of which were rejected, and objections to such rejection. Halstead v. Rader, 27 W. Va. 813.
Want of Qualification in the Incumbent—Facts Required in Notice.—When the ground for contesting an election was only the want of qualification to hold the office by the party returned as elected, it was held unnecessary to furnish with the notice a list of votes to be disputed, or to state facts showing that the person with the notice was held entitled to the office ; but it was held sufficient that the notice should show that the contestant was a candidate for the office at the election, and set forth the facts on which he based his objections to his opponent holding the office. Dryden v. Swinburn, 15 W. Va. 234, 20 W. Va. 89.
If the ground of contest is the disqualification of the contestee to hold office, the notice must state facts showing the disqualification. Halstead v. Rader, 37 W. Va. 813.
Notice in Election Contest—Substantial Compliance with Statute.—Substantial compliance with the requirements of the statute concerning the manner of giving notice of a coming election, for t he purpose of deciding upon the place for relocating the county seat was held sufficient in Welch v. County Court, 29 W. Va. 63, 1 S. E. Rep. 337.
fleaning of Notice as Used in the Statute.—It is said in Halstead v. Rader, 27 W. Va. 811, that the complaint called in the statute, § 9, ch. 109. W. Va. Code 1868, a notice does not mean simply an informal paper such as is usually understood by the term notice ; but it is in the nature of a complaint or information setting forth a cause of action as well as the commencement and foundation of an important legal proceeding. See Dryden v. Swinburn, 15 W. Va. 235.
Notice—Requirements of—Failure to Comply with.— A notice, which states as the sole ground of complaint, that the county court commissioners failed and refused to count the vote.s cast at a certain precinct, which were duly and legally certified by the commissioners who held the election at said precinct, and that if said votes had been counted, the contestant would have been elected to the disputed office is held insufficient and should have been quashed by the county court. And it was further held that such could not be amended after the expiration of ten days from the time the result of the election had been declared if it could be amended at all. Halstead v. Rader, 27 W. Va. 806.
Mere General Allegations Are Insufficient.—Mere general allegations that the contestee wa.s not elected, and that the return declaring him so is untrue, false and fraudulent, afford no information to the contestee of the defence he may be required to make. Halstead v. Rader, 27 W. Va. 810.
Petition of Contestant Filed at the Trial—For What Purposes Allowed.—In an election contest the contestant may of right file a petition at the trial, but not for the purpose or to have the effect of curing defects in the notices and specifications; and so far as the petition contains new allegations material to the case, they must be disregarded or such allegations should be stricken out. Harrison v. Lewis, 6 W. Va. 713.
Allegation of New Facts—To Cure Defects—When Allowed.—ft was decided in the contested election case of Harrison v. Lewis, 6 W. Va.721, under W. Va. Code 1868, ch. 6, § 13, where it is provided that such case shall be decided “according to law and the truth upon the petition, returns, and evidence to be submitted,” that facts, new and material to the contestant’s case could not be alleged upon the record and regarded by the court for the purpose of curing *112 any defects which may be inherent in the case made by the contestant in his notice, or notices and specifications, which were served upon the respondent within the time prescribed by law.
It was however held in this same case that the contestant might file his petition before the hearing is proceeded with, as of right; but not after the trial of the case had begun.
New Facts—Additional Notice Allowed—Time of Giving Notice.—By sec. 4, ch. 6, W. Va. Code 1868, it is expressly declared that “If new facts be discovered by either party after he has given notice as aforesaid, he may give additional notice or notices to his adversary, with specifications and affidavit .as above prescribed.” But it is held in Loomis v. Jackson, 6 W. Va. 613, 688, that the contestant in a judicial contest, needing all the time allowed by the law to collect the facts of the case, may postpone the service of his notice of contest until the sixtieth day after the election; and the respondent may in like manner and for a similar reason, delay the service of the return notice until the thirtieth day thereafter.
Additional Notice—New Facts— Requirements..—In the case of a contested election if the contestant gives an additional notice specifying new facts, it is essential that it appear in the notice that such facts are new and that they were discovered after service of the original notice, and that they could not have been discovered by the use of such diligence before service of the original notice, otherwise the additional notice is defective. Harrison v. Lewis, 6 W. Va. 713; Loomis v. Jackson, 6 W. Va. 613.
“The rule which requires the contestant to present such facts as that the court may see that the result of the election will be changed if the facts be proven, is a rule which is not only consistent with the principle of pleading, but one which is sustained by the authority of particular cases; well considered and solemnly adjudicated.” Harrison v. Lewis, 6 W. Va. 713. It was therefore held in this case that the notice and specification taken together did not disclose such state of facts as required, hence it was insufficient and should on motion be quashed. See Halstead v. Rader, 37 W. Va. 806; Loomis v. Jackson, 6 W. Va. 613.
Contested Elections—Amendment of Notice—Two Methods.—In the trial of contested eleciions, two methods of amendment to the notices required by our statute are permissible: First, the statutory method, which is always based upon new facts discovered after the original notice has been given ; second, the method incident to common-law procedure. Ralston v. Meyer, 34 W. Va. 737, 12 S. E. Rep. 783.
It is further stated by the court in this case that fairness, purity, and freedom of elections are essential to free government, and the object of the judicial tribunal engaged in deciding upon a contested election is not so much to determine the private rights of the parties, as to decide whom the people have elected in that particular election, according to the very right of the case and the principles of justice ; hence, at common law, amendments to the notice of petition are permitted only to further the ends of justice, and to promote a true and impartial decision, according to the evidence. Ralston v. Meyer, 34 W. Va. 737, 12 S. E. Rep. 783.
Permission to Amend Counter Notice Refused—Votes Rejected.—The counter notice filed by a contestee in an election contest stated that A. and B. were not qualified voters, but had voted for the contestant; which latter had not challenged their qualificatk n in his notice. At the trial the contestee asked leave to strike from his counter notice the names of A. and B., and the allegations concerning them. This was refused, and the court found from the evidence that A. and B. were not qualified voters, but that they had voted for the contestee. It was held, that leave to amend was properly refused, and that the court was justified in rejecting the votes of A. and B. Ralston v. Meyer, 34 W. Va. 737, 12 S. E. Rep. 783.
Rights Waived by Failure to Act.—The contestees, by filing a joint counter complaint, and allowing the contestants to incur expense in procuring depositions, waive their right to move for a dismissal on the ground of misj oinder of the parties. Richardson v. Farrar, 88 Va. 760, 15 S. E. Rep. 117.
VIII. PROCEDURE.
A. CERTIORARI.
Certiorari Lies to Election Commissioner—General Rule.—The writ of certiorari lies in the state of W. Va. from a circuit court or a judge thereof in vacation to the county court commissioners convened in special session to ascertain the result of an election. Chenowith v. Com’rs, 26 W. Va. 232; Fowler v. Thompson, 22 W. Va. 107; Dryden v. Smith, J., 15 W. Va. 483.
The general rule is, that upon such writ the superior court will only inquire into errors and defects which go to the jurisdiction of the inferior court. But if the inferior tribunal proceeds in a summary manner and not according to the course of the common law, and there is no remedy by appeal or writ of error, then the superior court will consider other than jurisdictional questions. Chenowith v. Com’rs, 26 W. Va. 232 ; Dryden v. Swinburne, 20 W. Va. 89 ; Dryden v. Swinburn, 15 W. Va. 234; Poe v. Machine Works, 24 W. Va. 517. See Poteet v. County Commissioners, 30 W. Va. 58, 3 S. E. Rep. 97.
Elections and Voters—Rulings of Canvassers—Review by Certiorari.—The rulings of the commissioners of a-county sitting asa board of canvassers, after an election, to ascertain the result thereof in the county, are subject to review by the circuit court on writ of certiorari. Fleming v. Com’rs, 31 W. Va. 608, 8 S. E. Rep. 267; Alderson v. Commissioners, 31 W. Va. 633, 8 S. E. Rep. 274; Fowler v. Thompson, 22 W. Va. 106.
Certiorari Proper—To Review Action of Supervisors in Contested Case.—In Cunningham v. Squires, 2 W. Va. 422, upon application, by one of the contestants, to the supreme court of appeals for a writ of prohibition to the circuit court of Braxton county to prohibit that court from supervising by means of certiorari the action of the board of supervisors in the matter of a contested election for clerk of the circuit court of said county, the right was denied. But the action of a circuit court on the right of certiorari to the proceedings of a board of supervisors, to determine the rights of parties in an election controversy on its merits is subject to review by the supreme court of appeals, for it errs in the matter.
Right of Review in Election Cases—Certiorari—Writ of Error.—In an election contest before a county court or other inferior tribunal, the decision may be reviewed by the circuit court by the writ of certiorari ; and the decision of the circuit court in such case may be reviewed in the supreme court of appeals by writ of error. Dryden v. Swinburne, 20 W. Va. 90. See same case, 15 W. Va. 234; also, Swinburn v. Smith, 15 W. Va. 483.
*113 Election Contest—Petition for Certiorari.—A petition for a writ of certiorari to bring to the circuit court, for review, proceedings of the commissioners of a county court, in the canvass of the returns of an election, filed by a candidate, which fails to show that he was prejudiced by the errors complained of, is not sufficient to justify the award of such writ, and will be held bad without demurrer at the hearing ; and the judgment of a circuit court reversing the action of the commissioners upon a certiorari based on such petition will be reversed by the supreme court, with judgment for costs in that court against the party who filed such petition. Fleming v. Com’rs, 32 W. Va. 637, 9 S. E. Rep. 867. See Supervisors v. Minturn, 4 W. Va. 300.
It was held in Dryden v. Swinburn, 15 W. Va. 234, that the circuit court properly granted certiorari on the petition accompanied by a copy of the record though no previous notice had been given to the opposing candidate in the election contest to show canse why the writ should not be awarded, this being a matter within the discretion of the court, which discretion was properly exercised in this case.
Certiorari—Notin Due Form—Time of Making Objection.—Where a rule is asked in the circuit court against the board of supervisors, in the nature of a certiorari, and also to show cause why a mandamus should not be awarded, the former to revise the proceedings and reverse the order of the board, setting aside an election at which the petitioners claim to have been duly elected to certain county olfices, and the latter to compel it to declare the election of said officers as shown by the returns certified by the officers conducting the election, and grant them certificates of election, no objection being made to the process in the circuit court, it was held too late to claim in the appellate court that it is not a proceeding by certiorari in due form, and the rule awarded for the mandamus must be regarded as only ancillary to the writ prayed for (which was the writ of certiorari ?). Burke v. Monroe Co., 4 W. Va. 371.
Supervision by Circuit Court—Methods—Constitutional Provision.—The Constitution, § 12, art. 8, declares in the most explicit terms that “the circuit court shall have the.supervision and control of all proceedings before justices and other inferior tribunals, by mandamus, prohibition, and certiorari.” Alderson v. Com’rs, 31 W. Va. 633, 8 S. E. Rep. 274. See Constitution of W. Va., art. 6, § 6; Cunningham v. Squires, 2 W. Va. 422 ; Burke v. Monroe Co., 4 W. Va. 371.
Writ of Error and Supersedeas Does Not Lie—Certiorari.—A writ of errorland supersedeas does not lie from a circuit to a county court in an election contest, but a writ of certiorari is proper. The supreme court having so decided and remanded the case back to the county court for trial, and the county court having decided the case, and a circuitl judge having issued a writ of error to this judgment; this writ having been issued by direction of the circuit court judge without jurisdiction or authority was held null and void an d all proceedings thereon prohibited by the order of the supreme court. Swinburn v. Smith, J., 15 W. Va. 483.
In this same case an injunction issued by the circuit court prohibiting the person who had been declared elected to the office and duly qualified from exercising the duties of his office or from interfering with the then incumbent, was held void.
Refusal to Award Certiorari—Reviewed by Writ of Error.—On refusal of a circuit court to award a writ of certiorari on the proper petition, to review the proceedings of the county court, in ascertaining and declaring the result of the vote on a relocation of a county seat, the proceedings may be reviewed by writ of error issued by the supreme court of appeals. Welch v. County Court, 29 W. Va. 63, 1 S. E. Rep. 337.
Decision of Court in Ascertaining Result of Vote-Judicial Act—Subject to Review.—The final judgment of the county court, in ascertaining and declaring the result of the vote at an election on the question of a relocation of the county seat, is a judicial act like the judgment of the court on a contested election case before it. and therefore subject tobe reviewed by the circuit court. Poteet v. County of Cabell, 30 W. Va. 58. 3 S. E. Rep. 109; Welch v. County Court, 29 W. Va. 63, 1 S. E. Rep. 337.
Duties of Circuit Court upon Review by Certiorari.— Upon a writ of certiorari used as an appellate proceeding to bring to the circuit court for review a judgment or order of an inferior tribunal, the circuit court should decide all matters of law and fact, including those on the merits fairly arising on the record, either affirming such judgment or order, or reversing or modifying it, and render such judgment as the inferior tribunal should have rendered, or remand it to that tribunal where further proceedings are necessary, with distinct decision on tfie points involved in the latter event. Where, however, further proceedings are necessary, outside the record the circuit court cannot retain and try the cause, but must remand to the inferior tribunal for such proceedings. Alderson v. Com’rs, 32 W. Va. 454, 9 S. E. Rep. 863.
In Dryden v. Swinburne, 20 W. Va. 89, it was decided that, “a case being brought before a circuit court by writ of certiorari for review, it should review. not only jurisdictional questions of irregularity in the proceeding of the inferior tribunal, but all questions of law, and all actions alleged to be based on erroneous principles, or taken in the absence of all evidence to justify such action. ” Aiderson v. Com’rs, 32 W. Va. 454, 9 S. E. Rep. 863.
B. MANDAMUS.
When Proper—Examples.—The writ of mandamus is the proper remedy to restore a clerk of a court ousted from his office by the illegal appointment of another person. Dew v. Judges, 3 H. & M. 1, 3 Am. Dec. 639.
Parties to the Writ.—The persons occupying the office ought to be made a party to the rule, or to the conditional mandamus, or such rule or mandamus ought to be served upon him, so as to enable him to defend his right before the peremptory mandamus issues; but if it appear from the record that he was apprised of the proceedings and defended his right, it is sufficient. Dew v. Judges, 3 H. & M. 1, 3 Am. Dec. 639.
Jurisdiction by Mandamus—Board of Supervisors.— In Supervisors v. Minturn, 4 W. Va. 300, M. filed his petition and exhibits in the circuit court of Mason county, praying that a writ of mandamus be awarded him, against the board of supervisors, as commissioners of election, to compel them to allow him to qualify and give bond as treasurer of the county. It was held on appeal to the supreme court that the circuit court had no jurisdiction by mandamus to compel the board of supervisors in such case.
Proper Remedy — ilandamus — Certiorari. — While mandamus is the proper legal and efficacious remedy
*114 provided by statute for the purpose of compelling the election officers to discharge their duties in conformity with the law, when such officers, in violation of their ministerial duties, assume the exercise of judicial functions, certiorari may be resorted to for the purpose of reviewing their erroneous rulings, although mandamus would furnish more speedy, less expensive, and more adequate relief. Dunlevy v. County Court (W. Va.), 35 S. E. Rep. 956.
Petition for Mandamus—Will Not Lie against Commissioners in Matters of Discretion.—In. Marcum v. Ballot Com’rs, 42 W. Va. 263, 26 S. E. Rep. 281, the question before the court was, whether mandamus would lie, under the present election law of West Virginia, to compel the ballot commissioners to place the name of a certain claimant of the right on the ticket, in case where two certificates of nomination for judge of the eighth circuit, emanating from two conventions, each claiming to be the true democratic nominating convention, were presented to the ballot commissioners of Wayne county, each asking a place on the official ballots, in exclusion of the other; it was held that, although the ballot commissioners were ministerial officers, yet this question was one involving judicial discretion and mandamus would not lie; the court citing State v. County Court, 33 W. Va. 589, 11 S. E. Rep. 72, in support of the statement that mandamus will not lie to control the exercise of the discretion of any court, board or officer when the act complained of is either judicial or quasi judicial in its nature. See Miller v. County Court, 34 W. Va. 285, 12 S. E. Rep. 702; State v. Herrald, 36 W. Va. 721, 15 S. E. Rep. 974.
If, however, the act is merely ministerial mandamus will lie. Board v. Mmturn, 4 W. Va. 300; Doolittle v. County Court, 28 W. Va. 158.
Electoral Boards—Mandamus.—In Cromwell v. Com., 95 Va. 254, 28 S. E. Rep. 1023, a case in which the members of the electoral board were unable to agree and failed to appoint any person to fill a vacancy in that body, or to appoint judges of election as required by the statute, it was held that mandamus would lie to compel the board to perform the duty imposed upon it by law, and for failure to obey a peremptory mandamus, that they might be punished for their contempt.
Scope of Mandamus Extended—Statutes.—Section 89, ch. 3, W. Va. Code 1891, as re-enacted in chapter 25,
Acts 1893, incases involving duties of ballot commissioners under said chapter gives the writ of mandamus more scope than at common law, rendering a process to control them as to all matters, ministerial or judicial. Marcum v. Ballot Com’rs, 42 W. Va. 263, 26 S. E. Rep. 281.
C. PROHIBITION.
Prohibition—When Proper—In General.—Prohibition lies only in case of unlawful exercise of judicial functions. Acts of mere ministerial, administrative, or executive character do not fall within its-province. Brazie v. Commissioners, 25 W. Va. 213.
When Prohibition Lies.—The writ of prohibition lies from a superior court, not only to inferior judicial tribunals, properly and technically denominated such, but also to inferior ministerial tribunals, possessing incidentally judicial powers, or tribunals such as are known in the law as quasi judicial tribunals, and, even in extreme cases, to purely ministerial bodies, when they usurp judicial functions. Fleming v. Com’rs, 31 W. Va. 608, 8 S. E. Rep. 270.
Same—Proper Case—Certiorari.—A writ of prohibition lies from a circuit court to the county commissioners assembled to ascertain the result of an election, under Acts 1882, ch. 155, to prevent them from exceeding their legislative powers, by examining witnesses and hearing evidence to determine whether the precinct commissioners have certified and returned the votes of persons not entitled to vote with a view to rejecting such votes. Brazie v. Fayette Co. Com’rs, 25 W. Va. 213; Alderson v. Com’rs, 31 W. Va. 633, 8 S. E. Rep. 274. And where such commissioners decide improperly, and declare the wrong result, their action will be controlled by certiorari. Cunningham v. Squires, 2 W. Va. 422; Chenowith v. Com'rs, 26 W. Va. 230. See also, Poteet V. Com’rs, 30 W. Va. 58, 3 S. E. Rep. 97.
Prohibition to Correct Error—Improper.—In Moss v. Barham, J., 94 Va. 12, 26 S. E. Rep. 388, a contested election case pending before the corporation court of Newport News, of which that court had jurisdiction, a writ of prohibition from the circuit court to prevent proceedings in the case was held improper; the court saying that the writ of prohibition does •not lie to correct error but to restrain an inferior court iron acting in a matter of which it has no jurisdiction, or in which it is transcending its jurisdiction. Nelms v. Vaughan, 84 Va. 696, 5 S. E. Rep. 704; Ellyson, ex parte, 20 Gratt. 10.
When the board of election canvassers assume to exercise legal discretion which it does not possess, its action may be controlled by prohibition. Brown v. Board of Election, 45 W. Va. 826, 32 S. E. Rep. 168.
Should the county court exceed its jurisdiction by giving judgment for costs to either party in a contested election case under Acts 1852, ch. 71, p. 65, a writ of prohibition from the circuit court is a proper proceeding to arrest the judgment. West v. Ferguson, 16 Gratt. 270.
County Seat Election—Jurisdiction of Returns Taken by Improper Tribunal—Prohibition.—when a board of election canvassers assumes jurisdiction, which it has not, to canvass and declare the result of a vote upon the relocation of a county seat, prohibition will lie to restrain it, though, in its proper action, its functions are ministerial, and not subject to prohibition. Brown v. Board of Election, 45 W. Va. 826. 32 S. E. Rep. 168.
Jurisdiction of County Court—Prohibition Improper.
—Under the law making it the duty of the judge of the county court to fill a vacancy in the office of sheriff, the circuit court has no authority to restrain this exercise of his jurisdiction by issuing a writ of prohibition. If he exercises it erroneously the remedy is by appeal. Shell, J., v. Cousins, 77 Va. 328. See also, Miller v. Marshall, 1 Va. Cas. 158.
In Ellyson, ex parte, 20 Gratt. 10, Judge Jones says: “If a county or corporation court has such jurisdiction in any case in a' contested election the petitioners have no right to a writ of prohibition.”
IX. OFFENCES AGAINST ELECTION LAWS.
Requirements of the Declaration—Presumption as to Action of Officers.—The mere allegations of wilfully, unlawfully, knowingly, maliciously and corruptly, and without sufficient cause, excluding and erasing the name of the plaintiff, from the registration book, etc., do not make the declaration good, but the declaration must show by allegation how the defendants acted wilfully, unlawfully, corruptly, etc. Did they erase his name without giving him the notice required ? Did they erase it without complying with the requirements of the statute? Did theyact without jurisdiction?- If so, the declaration should so allege, otherwise, the court will presume they acted within their jurisdiction and judicially, *115 and will refuse to take jurisdiction of a case against them for mere error of judgment. Fausler v. Parsons, 6 W. Va. 486.
Uncertainty of Allegations—Indictment Insufficient. —An election official was indicted under Code of 1873, ch. 8. sec. 43, for acting unlawfully in conducting an election. On motion to quash, it was held that though he may have acted unlawfully as charged in the indictment, it does not follow that he was guilty of corrupt conduct, for the punishment of which the statute was intended, and the indictment was insufficient. Boyd v. Com., 77 Va. 52.
Certainty in the Allegations—Necessary—Information.—In an information against a justice of the peace for bribery in an election of a clerk, it ought to be stated with certainty, that an election was holden. and that the vote was given at that election. Newell v. Com., 2 Wash. 88.
Gift of Intoxicating Drinks—Breach of Election Law-Indictment—Declaration.—The latter clause of section 10, ch. 5, Code, reads : “And if any person, whether a candidate or not, offer, give, or distribute any intoxicating drink to any voter on the day of an election, he shall forfeit not less than ten, nor more than fifty, dollars.” Held, that, in an indictment based on this section of the statute, it being charged that the person to whom the intoxicating drink was given was a legally qualified voter, it is not necesto state the facts constituting such person a qualified voter ; nor is it necessary to allege any special criminal intent, but the scienter, or general criminal intent that is, the accused knowingly and willfully did the unlawful act, is sufficient. The offense here charged, being a misdemeanor, is not within the meaning of the term “civil case,” as used in section 21, ch. 116, Code, and therefore the accused was not entitled to a special jury. But under section 17, ch. 116, the accused was entitled to challenge four jurors peremptorily, and, this having been refused, the judgment and verdict are set aside, and anew trial is awarded. State v. Pearis, 35 W. Va. 320, 13 S. E. Rep. 1006.
Wager on Election—Imposition of Pine under the Statute.—A short time before the election of certain county officers for Augusta county to be made in May 1858, M sold to S a wagon at the price of one hundred and fifty dollars, which was about the value of the wagon, to be paid by S when K, one of the candidates for the office of county court clerk at said election, should be elected to that office, and not at all, if he was not elected ; and S at the time of said sale put up his check agreeably to that understanding ; and upon these terms took possession of the wagon. Held, this is a wager on the part of both M and S, within the meaning of the Code of 1849, ch. 198, § 10, p. 744; and both M and S are liable to a fine not exceeding the amount that either might lose. Shumate v. Com., 15 Gratt. 653.
Betting on Elections—Statute Construed as Rem= edial.—Section 10 of ch. 198, Va. Code 1849, in relation to betting on elections, was construed as a remedial statute in Shumate v. Com., 15 Gratt. 653.
Betting on Elections—lndictment“Construction.—An indictment under § 9, ch. 5, Code of 1887, which alleges that G. and E. bet on election, though it does not expressly allege that they bet with each other will be construed to mean that they bet with each other, and is therefore good. State v. Griggs. 34 W. Va. 78, 11 S. E. Rep. 740.
It was also held in this case that a bet made after the voting had closed, but before any legal declaration of the result of the election, is an offence. See State v. Snider, 34 W. Va. 83, 11 S. E. Rep. 742.
Betting on Elections—Joint Indictments—Amount of Fine—Statutes.—On conviction of two parties jointly indicted under section 9, ch. 5, Code of 1887, for betting on elections, there must be a separate fine against each, and that fine must be the value of the money or other thing which the party wagered plus $50. State v. Griggs, 34 W. Va. 78, 11 S. E. Rep. 740; State v. Snider, 34 W. Va. 83, 11 S. E. Rep. 742.
Betting on Elections—Statute Construed—Limits of Fine.—Under section 10, ch. 198, Va. Code, 1860, providing that if any one bet on elections, he should be fined, not exceeding the amount he bet; it was held in Re Shumate. 15 Gratt. 653, that the amount risked or bet was the value of the property bet, because one might lose that; and, as a bet was a joint transaction, both parties were held equally guilty, and each was liable to a fine up to the largest amount bet by either party.
Judicial Notice Taken of the Result of Local Election. —The court will take judicial notice of the-fact that at an election held under the Act of February 26, 1886, in the magisterial district, wherein the oitence of violating the statute is laid, the vote against the granting of liquor prevailed, and no allegation to that effect is necessary in the indictment. Thomas v. Com., 90 Va. 92, 17 S. E. Rep. 788; Savage v. Com., 84 Va. 582, 5 S. E. Rep. 563.