Joynes, J.,
delivered the opinion of the court.
This ease depends upon the question, whether a county or corporation court has jurisdiction and authority to decide, in the case of a contested election, that *24 there has been no valid election, and thereby to create a vacancy, to be filled in the manner provided by law. If a county or corporation court has such jurisdiction and authority in any case of a contested election, the petitioners have no right to a writ of prohibition. We cannot enquire whether the corporation court of Richmond had or had not such jurisdiction and authority in the particular case. That would be to convert a writ of prohibition, which proceeds upon an excess of jurisdiction, into a writ of error, which proceeds upon an error in the exercise of jurisdiction. It has accordingly been contended, on the part of the petitioners, that the authority conferred upon the county and corporation courts to determine contested elections, applies only to cases in which two or more persons have been voted for, for the office in question; and that, in every such case, the court is .bound either to allow the person who has already received a certificate of election from the commissioners, to retain it, or to give it to another person who was voted for at the election; and that it cannot, in any case whatever, decide that there has been no election, so as thereby to create a vacancy.
The authority of county and corporation courts to determine cases of contested elections, is conferred by section 69 of “an act to provide for a general election,” approved May 11, 1870. (Sess. Acts p. 97). This section is a transcript, in all essential particulars, except only the clause comprised in the last four lines, of the 9th and 10th sections of the general election law of 1852, (Sess. Acts pp. 65-6), which were reenacted in the 67th and 68th sections of the general election law of 1858. (Sess. Acts pp. 29, 80).
The complaint must be filed within ten daj^s after the election. It is to be heard at the next term of the court, which sits every month, unless good cause be shewn for a continuance. The case is to be determined *25 by the court, without a jury. As soon as the complaint is filed, the parties may proceed to take depositions, and the case is to be heard upon the depositions and upon oral testimony, if any. And the decision of the court is declared to be final. It was obviously the purpose of the legislature, in this section, to provide as cheap and expeditious a remedy as the case would admit of, and to close all such controversies in the shortest practicable time.
In the absence of such a provision as this section supplies, it would have .been necessary to resort to the writ of quo warranto, to oust an officer alleged to have been unduly elected. That writ could only be obtained from the Circuit court, which sits but twice a year, except in a few towns having Hustings courts with Circuit court powers; and its judgment would not be final, but subject to review upon a writ of error.
In many cases, especially of annual offices, it would have been in the power of a candidate, fortunate enough or dexterous enough, to secure the certificate of the commissioner, by the help of a little management, to wear out the term of office in litigation. And it would often be impossible, with the utmost diligence, to bring a litigation, fairly conducted, to an end, until the term had run out, or so much so that what was left of it would not be worth contending for, or worth having. This obvious policy of the statute must be borne in mind in putting a construction upon it.
The opening clause of the 69th section provides, that the “return of elections shall be subject to the enquiry, determination, and judgment” of the court. From this it is argued, that the authority of the court is limited to an examination of the returns. The complaint of the fifteen voters, however, may be of an “ undue election or false return.” It is provided that the court, “in judging of said election, shall proceed upon the merits thereof, and determine finally concerning the same.” *26 Depositions may be taken “ to sustain or invalidate said election.”
We are not called upon, in this case, to define tbe scope of investigation and enquiry authorized by those provisions. But it seems to be very clear, that it is not restricted to a mere examination of the returns; and; moreover, that it may be such as to “ invalidate” the election: in other words, such as to show that there has been no legal and valid election. The election which is contested, may be invalidated for the reason that the entire election was illegal and void; if the enquiry may take that scope, does it not follow that the judgment of the court may respond to the enquiry? "Why authorize the court to enquire- into what it cannot determine?
But it is contended that the latter part of the section, and especially the last clause, limits the jurisdiction of the court to cases of contest between competing candidates. This part of the section speaks of the party “whose election is contested,” and directs that the court shall proceed, at the next term, to “ determine said contests.” The first of these expressions obviously refers to the proceeding authorized by the first clause; for no other contest is provided for. So too, “ the said contests,” which the court is to determine, are those instituted by the complaint of the fifteen voters; for no other is spoken of or provided for in the previous parts of the section. “Each party” is to be allowed to take depositions; which is said to contemplate an array of one competitor against another. But the section contains no provision for making the defeated candidate a party. The complaint is that of the voters; not his complaint. The officer whose election is contested is to have notice of the complaint of the fifteen voters by service of a copy; there is no provision for any intervention by the defeated candidate, or for the filing or service of his claims or allegations. *27 And what reason can be assigned for restricting the right of the voters to complain of an undtie election, to cases in which there were competing candidates, or more than one person voted for ?
Then comes the last clause, which is so much relied upon, and which is in these words: “ When the contest is decided, a cei’tificate of election, shall be issued to the party in whose favor the contest is decided, in the manner prescribed by law, unless a certificate shall have been previously issued to such person.”
As I have said before, this clause is not in the act of 1852, sects. 9-10, or in the act of 1858, sects. 67-8, which are the prototypes of the other parts of this section. Whát has been said already, seems to be sufficient to establish, that there is nothing in the other parts of this section to confine the juiisdiction of the court to cases of contests between competitors. In the case of Ferguson v. West, 16 Gratt. 270, it was held by this court that the jurisdiction of the County court, under the act of 1852, sect. 9-10, was not confined to cases of contest between competitors. Judge Robertson, delivering the opinion of the whole court, said: “These proceedings are novel and peculiar in their character, and seem designed rather for the pui’pose of ascertaining, on behalf of the public, who has been duly elected, than to enable the candidates to litigate, on their own behalf, the question of right to an office. 2STo contest can be commenced unless complaint of an undue election or false return is made by fifteen or more of the qualified voters, two of whom must make oath or affirmation to the truth of the facts stated in the complaint. This must be filed in the clerk’s office within ten days after the election, and the party whose election is contested must, within ten days after the complaint, be served with a copy of it. The defeated candidate, who is the only other party that can be supposed to have any personal interest in the mattei’, can *28 not, at his own pleasure, enter upon the contest, and it may he commenced and prosecuted without his knowledge or against his will. He is not a necessary party, any sta£'e of the proceedings. Indeed, the complaint may he made and the election set aside where there has been no candidate, except the one whose election is contested.” These remarks were not obiter, as maintained by the counsel for the petitioners here. They contained the very gist of the ground on which the court put its decision, that costs could not be given to either party in such a proceeding.
Upon familiar principles, the Legislature of 1870 must be presumed to have known of this decision, and to have intended to reenact the 9th and 10th sections of the act of 1852, in the sense thus put upon them by this court, unless a contrary intention is plainly indicated. The only difference between the 9th and 10th sections of the act of 1852, and the 69th section of the act of 1870 being the addition, at the end of the latter of the clause quoted above, the only question is, whether an intention to make a change in the law is plainly indicated by this new clause.
We think this clause has no such effect. It does not in terms profess to define jurisdiction, or to limit the scope of other parts of the section, as construed by this court. Those parts of the section which define the causes of complaint, and the duty and power of the court, remain as before. This clause prescribes a single thing to be done in those cases where there is a decision in favor of one of several competitors, but says nothing about the cases in which there was but one person voted for. The purpose was to give to the successful party a certificate. But there could be no difficulty, without this clause, in furnishing to the successful competitor a copy of the order of the court, as evidence of his right. This, or something equivalent, must have been done under the acts of 1852 and 1858, *29 so that’this clause was not at all essential to the rights of the party. Besides, no reason appears why the Legislature should have narrowed the jurisdiction in the mode contended for. And it is obvious, that if the law should be thus construed, it would be wholly inadequate to meet many cases of “ undue election or false return.”
It was further contended, that as the petitioners have qualified and gone into possession of their respective offices, they can only be deprived of them by a judgment of ouster upon quo warranto.
It is true that no express authority is given to the court to annul a qualification to office, and to oust the incumbent. And so no express authority is given to annul a certificate of election, where there has been no qualification. But the judgment of the court^ that the election, under which an incumbent holds, was invalid, and which judgment is made by the statute final and conclusive against him, is necessarily fatal to his title derived from that election. This being so, why turn the case over to another proceeding ? "Why not put the judgment of the court into operation at once, instead of requiring another proceeding, which will cause expense and consume time, and in which nothing can be litigated ?
It was contended by the counsel for Judge Guigon, that this statutory proceeding, in cases of contested election, gives to the court as ample authority as might be exercised on the principles of the common law, upon quo warranto or mandamus, and that it is exclusive of those remedies. He cited for the latter proposition the case of Attorney-General v. Garriguez, 28 Penn. St. R. 9, decided upon a statute of Pennsylvania, the material parts of which are in the very same words as our statute. We are not called upon to say what is the full extent of the powers of the court in eases of contested election, nor whether the statutory remedy is ex- *30 elusive of the remedy by quo warranto or mandamus. But this we may properly say, that the court may ,exerall such powers, consistently with the rules and principles of law, as may be necessary to render its jurisdiction effectual, and that there is no necessity to resort to any other proceeding to oust an incumbent, whose title has been adjudged bad.
It was strenuously insisted, that the power to vacate an election is a dangerous power, and that the Legislature ought not to be held to intend the bestowal of such a power, unless the intention is unmistakably expressed. Such a power maybe undoubtedly abused; and so, too, may the power to decide between rival candidates. There may be great temptation to abuse this latter power, in times of high party excitement. There can be no danger, on the other hand, in remitting the power of filling an office to the people, to whom it ultimately belongs. In a doubtful case, it ought to be done, rather than have the office filled by the appointment of any court. Such a course is more consistent with sound policy, more just to the voters, more likely to prevent abuse, and more agreeable to the principles of our government.
The motion to award a rule is denied.